**JOHN E. MITCHELL COMPANY,**
Appellant,

v.

**Robert V. ANDERSON et al., Appellees.**

No. 5422.

Court of Civil Appeals of Texas,
Waco.

March 13, 1975.

Rehearing Denied April 10, 1975.

Storey, Armstrong, Steger & Martin, Dallas, for appellant.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Jr., Gardere, Porter & DeHay, Coke & Coke, Akin, Gump, Strauss, Hauer & Feld, Dallas, for appellees.

OPINION

McDONALD, Chief Justice.

This is an appeal by defendant Mitchell Company from judgment against it for

breach of contract with plaintiff Anderson, and from declaratory judgment that defendant pay plaintiff $1.00 per unit on automobile air conditioners manufactured and sold by defendant after November 1, 1955 for so long as such units are manufactured and sold.

Plaintiffs Anderson (and assigns of Anderson), sued defendant Mitchell Company alleging that plaintiff Anderson entered into a written contract with defendant; that the contract consisted of two letters dated October 26, 1955, and October 28, 1955, both executed and delivered simultaneously; that such contract was amended by letter agreements dated April 18, 1957, and October 10, 1966; that pursuant to such contract plaintiff assigned defendant his interest in a flow-control valve and defendant agreed to pay plaintiff royalties on air conditioners sold utilizing the valve; and further agreed to pay plaintiff $1.00 for each automobile air conditioner manufactured and sold by defendant which did not utilize the control valve.

Plaintiff alleged defendant made the payments until April 4, 1972 when defendant notified him it did not intend to make further payments and that it considered all agreements relating to payments terminated.

Plaintiffs prayed for judgment construing the contract, accounting, and judgment for amounts owing under the contract.

Defendant by answer denied that the letter of October 28, 1955 was a part of the contract contained in the letter of October 26, 1955, that the letter of October 28, was not supported by consideration, and that any agreement to pay plaintiff $1.00 per unit commissions contained in such letter was terminable at will.

Trial was to a jury which answered all issues submitted to it (and which will be noticed later) in favor of the plaintiffs. The trial court rendered judgment for plaintiff for $224,878. for automobile air conditioner units manufactured and sold by defendant thru April 25, 1974, and further decreed that the letters of October 26 and October 28, 1955 (as amended by the April 18, 1957 and October 10, 1966 letter) constituted a contract obligating defendant to pay plaintiff $1.00 on each automobile air conditioner manufactured and sold for so long as such units are manufactured and sold.

Defendant appeals on 12 points contending among other matters:

1) The trial court erred in holding the October 28, 1955 letter created an obligation for defendant to pay plaintiff.

2) If defendant was ever obligated to pay plaintiff $1.00 per unit, such was terminable by defendant.

3) The trial court erred in excluding the Mitchell-Lytle letter from evidence.

Plaintiff Anderson was an electrical engineer who designed and developed an automobile air conditioner known as the Mark IV, and who with two others organized Mark IV Inc., to manufacture and sell the product. By 1954 the company had a substantial distribution net throughout much of the country, and was searching for a manufacturing company with sufficient capabilities to satisfy its growing market, and was placed in contract with defendant.

In October 1954 Mark IV Inc., and defendant entered an agreement whereby defendant would manufacture the "basic unit" of the Mark IV air conditioners, and plaintiff assisted in coordination of the operations. Also during the year plaintiff and another invented a flow-control valve known as the Mitchell-Anderson valve or the "Robotrol", for use in automobile air conditioners. In October 1955, defendant purchased the air conditioning business of Mark IV Inc., and began the manufacture and sale of the unit itself, and plaintiff and defendant began discussing arrangements whereby plaintiff would be employed by defendant.

On October 26, 1955 Mr. John E. Mitchell, Jr., president of defendant presented plaintiff with a letter of that date, pertinent portions of which are:

"JOHN E. MITCHELL COMPANY, INC.

DALLAS, TEXAS
October 26, 1955

"Mr. R. V. Anderson
3110 N. Walker
Oklahoma City, Oklahoma

"Dear Bob:

"We are writing this letter to confirm our recent discussion regarding your employment by John E. Mitchell Company.

"1) The John E. Mitchell Company agrees to employ you for the year commencing November 1, 1955, in the capacity of consulting engineer at a retainer fee of $550. per month * *.

"2) It is understood that in consideration of the retainer fee, you will give the Mitchell Company the exclusive use of your time for the promotion of Marv IV Air Conditioning Units to be manufactured by the Mitchell Company. By the term 'promotion' is meant, primarily, engineering services, but it is understood that you will also give us help with sales, sales promotion, service engineering, and other activities connected with automobile air conditioning units, for which further consideration is specified in Paragraph 8, in the form of a special commission.

"3) While the period under consideration is for one year commencing November 1, 1955, it is of course understood by both of you and us that the arrangement will very likely be continued after one year, on a basis mutually satisfactory to us both. It is further understood * * * the Mitchell Company will have the right to terminate the arrangement on 60 days notice.

"4) In Paragraph 2 we stated that you would give the Mitchell Company your entire time. By this is meant that you will devote an average of at least 40 hours per week to the Mitchell Company's requirements. * * * (and) will prevent you from making any kind of similar arrangement with any other firm or individual.

"5) (Provides travel expenses to be furnished by Mitchell).

"6) (Provides office space to be furnished by Mitchell).

"7) You have agreed to assign to the Mitchell Company your interest in the invention involving the flow control valve * * *. In consideration for this * * * Mitchell Company agrees to pay you $100. in cash and a royalty of 2½% of the net sales price of any Mitchell-Anderson flow control valves that may be sold to original equipment manufacturers * * *.

"8) It is recognized that you have already performed valuable sales promotion services in helping to launch the Mitchell Company into the automobile air conditioning business. We refer particularly to the work you have done with Montgomery Ward, RCA Victor and many independent manufacturer's agents, distributors and dealers. It is also expected that we will call upon you to do considerable work of this kind in the future. In consideration of such sales promotion services, and to give you every incentive, we agree that in addition to the retainer referred to in Paragraph 1 and the royalty referred to in Paragraph 7, we will pay you a commission of $2.00 for each automobile air conditioner manufactured and sold by the Mitchell Company after

November 1, 1955, involving the use of the Mitchell-Anderson flow control valve * * *.

"9) The royalties referred to in Paragraph 7 and the commissions referred to in Paragraph 8 will be credited to you in the month when payment for the air conditioners or valves is actually received by us; and * * * shall be paid to you not later than the 15th of the succeeding month.

"This letter is written in duplicate. If you find that it is in proper order, please sign and return the copy for our files, keeping the original for your files.

"Yours very truly,

Accepted: /s/ R. V. Anderson    JOHN E. MITCHELL COMPANY
By /s/ John E. Mitchell, Jr."

There is evidence Mitchell suggested to plaintiff he take the letter home with him, study it, and if it met with his approval, return to Mitchell's office and execute it. On studying the letter it occurred to plaintiff that the letter made no provision for what would happen if defendant no longer used the Mitchell-Anderson flow control valve, or what would happen if plaintiff was no longer employed by defendant. On October 28, 1955 plaintiff returned to Mitchell's office with the letter unsigned and expressed these concerns to Mitchell. Mitchell thereupon prepared the following letter which he gave to plaintiff later, on October 28, 1955.

"JOHN E. MITCHELL COMPANY, INC.

DALLAS, TEXAS
October 28, 1955

"Mr. R. V. Anderson
3110 N. Walker
Oklahoma City, Oklahoma

"Dear Bob:

"With regard to the letter of agreement between you and the Mitchell Company dated October 26, 1955, you have brought up the point as to what would happen under Paragraph 8 in case we should at some time in the future manufacture automobile air conditioners in which the Mitchell-Anderson valve * * is not used.

"My answer to this question is that in such a case the Mitchell Company would still feel obligated to pay you a commission in the amount of $1.00 per unit, this being in recognition of the fact that you have already performed 'valuable sales promotion services in helping to launch the Mitchell Company into the automobile air conditioning business' ".

"Yours very truly,
/s/ John E. Mitchell, Jr.
John E. Mitchell, Jr."

The jury in answer to special issues submitted to it found:

1) Plaintiff Anderson did not sign the letter agreement of October 26, 1955 until he received the letter of October 28, 1955 signed by John E. Mitchell, Jr.

2) Plaintiff Anderson signed the letter agreement of October 26, 1955 after he had received the letter of October 28, 1955, signed by John E. Mitchell, Jr.

3) Plaintiff Anderson and John E. Mitchell, Jr., agreed that the letter of October 26, 1955, and October 28, 1955, constituted one complete agreement.

4) Plaintiff Anderson would not have signed the letter of October 26, 1955 on

October 28, 1955, but for the furnishing of the letter dated October 28, 1955 to him, by John E. Mitchell, Jr.

7) Plaintiff Anderson and defendant Mitchell Company had not reached an agreement in accordance with the terms of the October 26, 1955 letter prior to the time John E. Mitchell, Jr. and plaintiff discussed the subject of the October 28, 1955 letter.

Plaintiff performed his obligations under the agreement; he assigned his interest in the valve to defendant; he did promotional and engineering work required of him devoting an average of 40 hours per week to defendant's requirements, and he did not enter into any similar arrangement with others. Defendant paid plaintiff the $2.00 per unit provided for in paragraph 8 of the October 26 letter for units using the Mitchell-Anderson valve until 1961, and paid him the $1.00 provided for in the October 28 letter for units not using the valve until April 1972, when defendant wrote plaintiff it was terminating the payments effective as of payment for December 1971 sales.

On April 18, 1957 plaintiff, joined by an assignee Kenneth A. Ellison, and defendant entered into another letter agreement as follows:

"Dallas, Texas
April 18, 1957

"Mr. R. V. Anderson
5709 Preston Haven Drive
Dallas, Texas

"Dear Bob,

"Reference is made to the agreement between you and our Company set forth in letters dated October 26 and October 28, 1955, from this Company to you.

"This is to advise that we own the Robotrol patent and you will not be required to render services of any kind to the John E. Mitchell Company, Inc., in order to receive the payments referred to in Paragraphs 7 and 8 of the letter of October 26, 1955 nor the payments referred to in the letter of October 28, 1955.

"It is further agreed that the payments set forth in Paragraphs 7 and 8 of the letter of October 26, 1955 will cease and terminate upon the expiration of the life of the patent which you sold to us on October 26, 1955.

"Upon the cessation and termination of the payments as provided for under Paragraphs 7 and 8 in said letter of October 26, 1955, the payments referred to in the letter of October 28, 1955 will be continued as long as required by the terms thereof even though the patent has expired.

"It will be appreciated if you and Kenneth A. Ellison indicate your agreement with this letter by signing the enclosed copy and returning it to us.

"Accepted: /s/ Robert V. Anderson
　　　　　 /s/ Kenneth A. Ellison

"Yours very truly,
JOHN E. MITCHELL COMPANY, INC.
By /s/ John E. Mitchell, Jr.
　　　　President"

On July 29, 1960, plaintiff was discharged from his employment with defendant, but defendant continued the $2.00 and $1.00 royalty payments on unit sales to plaintiff.

On October 10, 1966, defendant wrote plaintiff the following letter:

"JOHN E. MITCHELL COMPANY, INC.

DALLAS, TEXAS
October 10, 1966

"Mr. R. V. Anderson
707 Stemmons Tower East
Dallas, Texas

"Dear Mr. Anderson:

"Reference is made to the agreement between you and our Company set forth in letters dated October 26 and October 28, 1955 and April 18, 1957.

"For further clarification it has been and is, our understanding that your rights and benefits under said agreement not be prejudiced should this Company merge or consolidate with another corporation * * *. Conversely it is our understanding that our rights under this agreement are assignable in event of such merger, consolidation, sale or reorganization.

"We agree that, in the event of any such change in our business or organization, as a part thereof, we will cause the successor to our air conditioning manufacturing business to expressly assume our obligations to you under the aforesaid agreement. Further, we have understood, and do hereby confirm to you, that your rights under said agreement shall survive your death and inure to the benefit of your heirs, executors, administrators and assigns. On the other hand, we have understood that your death would in no wise give occasion to any heir, executor, administrator or assign for denying any or all of our rights under said agreement.

"If this letter correctly states your understanding of the matters discussed, kindly evidence your agreement on the enclosed copy of this letter and return such copy to us.

"Accepted and agreed:  "Yours very truly,
/s/ Robert V. Anderson  JOHN E. MITCHELL COMPANY, INC.
　　Deceased  By /s/ Orville Mitchell
Kenneth K. Ellison  　　　President"

---

After plaintiff left the employ of defendant in 1960 he was still called on from time to time to perform services for defendant which he did so. In 1962, he attended professional meetings on defendant's behalf and over the years analyzed patents for defendant.

On March 12, 1972, John E. Mitchell, Jr. died, and on April 4, 1972, Orville Mitchell, Jr. then president of defendant wrote plaintiff that in the aftermath of Mr. Mitchell's death defendant found it necessary to review its agreements with plaintiff and "wish to advise that we do not intend to make any additional royalties or other compensation to you", and "please consider any and all agreements which we might have relating to payments * * to be terminated".

And defendant terminated such payments.

It was stipulated that since termination of defendants payments 224,878 automobile

air conditioning units not utilizing the Mitchell-Anderson valve had been manufactured and sold by defendant through April 25, 1974.

■ We revert to defendant's contentions 1 and 2, that the trial court erred in holding the October 28, 1955 letter created an obligation for defendant to pay plaintiff; and that if such obligation existed, it was terminable by defendant. Defendant further asserts the October 28, 1955 letter agreement was without consideration.

The jury found that the parties intended the October 26, and 28 letters to be one contract, and all of the evidence including the April 18, 1957 and October 10, 1966, letter agreements bear out and confirm this. Moreover the findings of the jury are in no way challenged by defendant. What the parties here intended was an issue of fact which has been resolved by the jury. Scott v. Ingle Bros. Pacific, Inc., S. Ct., Tex., 489 S.W.2d 554.

■ The agreement of the parties as evidenced by the October 26 and 28 letters is supported by ample consideration. Plaintiff performed the services and obligations required of him under the October 26 letter and same constitutes full, valid and ample consideration for defendant's promise of the $1.00 payments. Texas & N. O. R. Co. v. Jones, CCA, Er.Ref., Tex.Civ.App., 103 S.W.2d 1043; John L. Bramlet & Co. v. Hunt, CCA, NRE, Tex.Civ.App., 371 S. W.2d 787; McAnally v. Person, CCA, Er. Ref., Tex.Civ.App., 57 S.W.2d 945.

The letter of October 26 provided defendant would pay plaintiff a royalty of $2.00 on each automobile air conditioner manufactured and sold involving the use of the Mitchell-Anderson flow-control valve; and the letter of October 28, provided that if defendant manufactured automobile air conditioners in which the Mitchell-Anderson valve is not used "Mitchell would still feel obligated to pay (plaintiff) a commission in the amount of $1.00 per unit".

Defendant is still manufacturing and selling automobile air conditioners not utilizing the Mitchell-Anderson valve. Thus $1.00 per unit is still due plaintiff. Kennedy v. McMullen, CCA, Er.Ref., 39 S.W.2d 168; City of Big Spring v. Board of Control, S.Ct., Tex., 404 S.W.2d 810; Travelers Ins. Co. v. Brown, S.Ct., Tex., 402 S. W.2d 500.

Paraphrasing Kennedy supra 39 S.W.2d p. 174: At any time the payment of the $1.00 becomes too heavy for defendant to bear it can escape this obligation by ceasing to manufacture and sell air conditioning units.

Defendant's 3rd contention asserts the trial court erred in excluding a letter written by John E. Mitchell Company to a Mr. Roy C. Lytle in September 1964.

■ In such letter Mitchell Company responds to an inquiry from Mr. Lytle as to the payments being made to Anderson (a part of which had been assigned to Kenneth A. Ellison). Such letter is hearsay as to plaintiff. Moreover defendant has not demonstrated prejudice from the trial court's ruling rendering the matter harmless under Rule 434 TRCP.

All defendant's points have been considered and are overruled.

Affirmed.