**FORECA, S.A., Petitioner,**

v.

**GRD DEVELOPMENT COMPANY, INC. et al., Respondents.**

No. C–7370.

Supreme Court of Texas.

July 13, 1988.

Rehearing Denied Nov. 16, 1988.

Russell H. McMains, McMains & Constant, Corpus Christi, David K. Anderson, Caddell & Conwell, Houston, for petitioner.

Gerald B. Shifrin, El Paso, for respondents.

KILGARLIN, Justice.

At issue in this case is whether negotiations between the parties to this suit produced a valid, enforceable contract. Based on a jury verdict finding a breach of contract, the trial court rendered judgment for Foreca, S.A. (Foreca) for $389,940. The court of appeals reversed the judgment of the trial court, holding that the written instruments ₀ contained a condition precedent to the formation of a contract that had not been met. 747 S.W.2d 9 (Tex.App.). The court of appeals rendered a take nothing judgment in favor of GRD Development Company, Inc. (GRD) and George R. Dipp. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

The negotiations underlying this lawsuit involved the purchase of six amusement park rides. Foreca is a Belgium corporation. GRD is a Texas corporation with its principal place of business in El Paso, Texas. GRD and its owner and president, George R. Dipp, planned to open the Magic Landing Amusement Park in El Paso. In this endeavor, they sought to purchase six amusement park rides. On September 2, 1983, Foreca's president, Wim Poulussen, wrote Dipp and offered to sell and deliver six amusement park rides for approximately $2,000,000. The September 2 letter discussed financing and expressed Foreca's awareness that GRD wanted delivery of the rides before the end of January 1984. The letter concluded, as follows:

> As a general rule of the house all offers are subject to:
> —satisfactory legal and financial documentation,
> —legal restrictions or prior sale of one or more machines.

On September 12, 1983, GRD responded to the Foreca proposal, agreeing to the terms in general but proposing a different financing structure. Soon thereafter, the parties arranged to meet in El Paso.

After negotiating in person in El Paso with George Dipp, Poulussen prepared a handwritten document dated October 19, 1983. The document contained several pro-

visions: (1) the cost of six amusement park rides ($1,950,000); (2) the terms of payment; and (3) delivery information, including warranties. Provision 4, the genesis of much of the current controversy, read:

> 4. SUBJECT TO LEGAL DOCUMENTATION CONTRACT TO BE DRAFTED BY MR. DUNLAP.

Mr. Dunlop (not *Dunlap*) was Foreca's attorney in Houston. The document also provided that George Dipp and Paul Dipp would guarantee certain promissory notes and GRD would bear legal and out-of-pocket costs. Both Poulussen and George Dipp initialed the document. Foreca presented evidence that Poulussen advised George Dipp, during this meeting, that Foreca could not deliver the rides in February 1984 unless an immediate commitment to purchase was made. Poulussen testified that Dipp replied that such a commitment had been made.

On November 22, 1983, GRD wrote to Poulussen and informed him of GRD's decision "not to pursue any further negotiations" with Foreca. Foreca brought suit alleging breach of contract. The jury found: that the September 2 and October 19, 1983 documents constituted a buy and sell agreement; that GRD, by the November 23, 1983 letter, repudiated the agreement; that Foreca was ready, willing and able to perform under the agreement; and that Foreca would have made $389,940 profit on the deal.[1]

Foreca contends that the September 2 and October 19, 1983 writings constitute an agreement breached by GRD. GRD responds that no enforceable agreement existed because the "subject to legal documentation" provision in the October 19, 1983 instrument constitutes an uncomplied with condition precedent. GRD concludes that the court of appeals properly construed the meaning of an unambiguous contract provision.

This case involves a situation increasingly common in business negotiations. GRD and Foreca negotiated over the sale of amusement park rides. Agreement was reached as to certain material terms, yet another formal document was contemplated by the parties. Was the contemplated formal document a condition precedent to the formation of a contract or merely a memorial of an already enforceable contract?

Professor Corbin's writing is instructive on this question:

> One of the most common illustrations of preliminary negotiation that is totally inoperative is one where the parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. *Often it is a difficult question of fact whether the parties have this understanding*; and there are very many decisions holding both ways. These decisions should not be regarded as conflicting, even though it may be hard to reconcile some of them on the facts that are reported to us in the appellate reports. *It is a question of fact that the courts are deciding, not a question of law; and the facts of each case are numerous and not identical with those of any other case. In very many cases the question may properly be left to a jury.*

A. Corbin, *Corbin on Contracts* § 30 at 97 (1963) (emphasis added). Professor Corbin is not alone among commentators in espousing this view. *See, e.g.,* J. Calamari &

---

1. The jury issues, in pertinent part, read as follows. Issue No. 1:
   > Do you find that the writings of September 2, 1983 ... and October 19, 1983 ... constituted an agreement whereby Foreca would sell and GRD ... would buy the six amusement park rides ...?

   Issue No. 2:
   > Do you find that GRD ..., by its letter of November 22, 1983, repudiated the agreement, if any, with Foreca?

   Issue No. 3:
   > Do you find that Foreca would have been ready, willing, and able to perform its agreement, if any, with GRD?

   Issue No. 4:
   > What profit, if any, would Foreca have made if GRD ... had purchased the six amusement park rides from Foreca, pursuant to the agreement, if any?

J. Perillo, *Contracts* § 2–7 (3d ed. 1987). Restatement (Second) of Contracts § 27 (1979);[2] Note, *Contemplated Written Agreements—Contract or Memorial*, 26 Baylor L.Rev. 132 (1974); 17 Am.Jur.2d *Contracts* § 28 (1964).

This court quoted with approval, more than a decade ago, this excerpt from Professor Corbin's treatise. In *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554 (Tex. 1972), we encountered a similar contract formation dispute. Scott sold a mop manufacturing plant to Ingle. The purchase agreement provided that an employment agreement "[had] been prepared" whereby Scott would manage the business for five years at a stated salary. No such employment agreement had actually been reduced to writing. A dispute arose, and Ingle discharged Scott. Scott brought suit for breach of an employment contract. In a unanimous opinion, Chief Justice Greenhill posed the question before the court:

> [W]as that portion of the "purchase agreement" dealing with the employment of the seller, Scott, an enforceable contract? This depends upon the intention of the parties. An agreement simply to enter into negotiations for a contract later does not create an enforceable contract. But parties may agree upon some of the terms of a contract, and understand them to be an agreement, and yet leave other portions of an agreement to be made later.

*Scott*, 489 S.W.2d at 555. Thus, the intention of the parties would be determinative: "Whether the execution of a separate employment agreement was, and is, essential to a mutuality of assent is a question of the intention of the parties." *Id.* Upon restating the principle that intention is usually an inference to be drawn by the fact finder, the court held that whether the clause in the purchase agreement was meant to be a contract was for the trier of fact to determine. *Id.* at 557. *See* Note, *Contem-*

*plated Written Agreements—Contract or Memorial*, 26 Baylor L.Rev. 132 (1974). *See also Preload Technology, Inc. v. A.B. & J. Construction Co., Inc.*, 696 F.2d 1080, 1090 (5th Cir.1983); *Kanow v. Brownshadel*, 691 S.W.2d 804, 806 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Frank B. Hall & Co., Inc. v. Buck*, 678 S.W.2d 612, 629 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985); *John E. Mitchell Co. v. Anderson*, 520 S.W.2d 927, 934 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.); *Houston Chronicle Publishing Co. v. McNair Trucklease, Inc.*, 519 S.W.2d 924, 928 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.).

*Scott* guides our analysis today. Accordingly, we hold that it is a question of fact in this case whether the terms agreed to and embodied in the September 2 and October 19, 1983 writings were intended to be the final expressions of the contract or were only preliminary negotiations which the parties did not intend to have legal significance until execution of the contemplated legal documentation. This question was properly submitted to and answered by the jury in fulfillment of its fact finding responsibilities. In some cases, of course, the court may decide, as a matter of law, that there existed no immediate intent to be bound. This case, however, is not such a case. The evidence as to the intent of the parties is disputed. More important, the "subject to legal documentation" language is not conclusive on intent to contract. *See Scott*, 489 S.W.2d at 556. The jury's resolution of this issue should be allowed to stand.

The judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.

ROBERTSON, J., dissented and filed an opinion in which WALLACE, MAUZY and CULVER, JJ., joined.

---

**2.** Comment c to section 27 of the Restatement (Second) of Contracts sets forth the following circumstances which may be helpful in determining whether a contract has been concluded: the extent to which express agreement has been reached on all the terms to be included; whether the contract is of a type usually put in writing; whether it needs a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance during the negotiations.

ROBERTSON, Justice, dissenting.

I respectfully dissent. The majority has constructed a somewhat persuasive argument; however, in the process, it has divorced itself from a basic tenet of contract construction.

The sole issue presented in this case is simple: Is the phrase "subject to legal documentation" an ambiguous term? Under settled rules of contract construction, ambiguity is a question of law for the court to decide by examining the contract as a whole in the context of the circumstances present when the contract was drafted. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). And if a contract is written so that a provision can be given a definite legal meaning, then it is not ambiguous and the court will therefore construe the contract as a matter of law. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 518, 243 S.W.2d 154, 157 (1951). This is the exact situation presented in this case.

During trial, *neither* party contended that the term "subject to legal documentation" was ambiguous. Absent any dispute as to ambiguity, it thus became the trial court's duty to construe the contract as a matter of law.

It is well settled that terms such as "subject to" create a condition precedent. *Hohenberg Brothers Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). And, in this case, the term established a condition precedent to the formation of the contract. Inasmuch as the required "legal documentation" never took place, no contract was established between Foreca and GRD.

I would therefore affirm the judgment of the court of appeals.

WALLACE, MAUZY and CULVER, JJ., join in this dissenting opinion.