Affirmed and Memorandum Opinion filed September 13, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00922-CV

___________________

 

MCRB I, Ltd. d/b/a/ Meridian Technologies,
Appellant

 

V.

 

Southwest Rail Industries, Inc.,
Appellee



 



 

On
Appeal from the 25th District Court

Colorado County,
Texas



Trial Court Cause No. 22,344

 



 

 

MEMORANDUM OPINION

            In this breach-of-contract case, appellant, MCRB I,
Ltd. d/b/a/ Meridian Technologies (“Meridian”), appeals from a judgment
rendered after grant of partial summary judgment in favor of appellee,
Southwest Rail Industries, Inc. (“Southwest”), on the issue of whether a
contract existed and a bench trial on damages.  In a single issue, Meridian
contends the trial court erred by granting partial summary judgment on the issue
of whether a contract existed.  We affirm.

 

Background

In 2008, Southwest and
Meridian discussed the possibility of Southwest’s leasing fifteen 23,500 gallon
railroad cars to Meridian.  The primary negotiations were between Southwest
Vice President Jason Huette and Meridian Director of Logistics Trey Walker.  On
August 20, 2008, Walker sent Huette an email stating, “I want to pull the
trigger on 15 of those new 23,500’s that you and I spoke about.”  On August 22,
2008, Huette sent Walker a confirmation letter, a generic master lease, and a
credit application.  Huette stated that the master lease was “only for review”
and asked Walter to respond with any comments or questions concerning the
master lease.  Huette also requested that Walker print the confirmation letter,
providing the company name, town name and the delivering railroad, and then
sign and return the confirmation letter to Huette.  On August 25, 2008, General
Partner Mike Clements complied on behalf of Meridian.[1]

The letter, including
the information provided by Meridian, contained the following terms:  (1) the
type and number of rail cars Meridian was leasing (fifteen 23,500 gallon tank
cars with insulation and exterior coils); (2) the monthly charge ($650 per
car); (3) the length of the contract (three years); (4) the location where the
cars would be delivered (Chusei); (5) the condition in which the cars must be
returned (clean and free from residue); and (6) the responsibility for the cost
of the cars being placed into service (Meridian’s).  The letter also contained
the following:  “Please acknowledge your acceptance below and return by fax to
[.]  Upon your acceptance of this confirmation letter a formal rider and master
lease will be forwarded to you.”

On August 29, 2008,
Southwest leased fifteen tank cars from CIT group to be delivered to Chusei. 
In early September, Meridian requested, for its review, a master lease specific
to Meridian, in lieu of the generic lease Southwest had previously provided.

Thereafter, Walker and
Huette exchanged further emails, with both parties listing proposed changes to
the master lease and Huette pressing Walker for a delivery date.  In an email
dated October 2, 2008, Walker wrote, “Assuming that the attorney’s changes are
acceptable and neither company have [sic] any other changes or issues needing
discussion before we have an agreement, I think that we can look towards the
beginning of November to begin the process of shipping the railcars from Mt
Pleasant to Bayport.”  On October 6, 2008, Huette communicated, “Trey, we need
to get these cars moving ASAP.  I am getting pushed from my supplier and I
can’t hold them off any more.  They are about to place them on rent and start
charging me storage as well.”

On October 13, 2008,
however, Meridian General Manager Rick Billings wrote Huette:

. . . . I regret to inform you that, for reasons completely
beyond the control of Meridian, the project involving the use of fifteen SRI
railcars to transport tall oil pitch has been shelved, at least temporarily and
perhaps permanently. Therefore, we will not be entering into a lease for the
railcars in the immediate future.

Notwithstanding your characterization of the 22 August 2008
letter, Meridian has never executed a lease agreement for these railcars and
repudiates and will vigorously oppose any attempt on your part to charge
Meridian for lease rent or storage on railcars we have not leased.

            In March 2009,
Southwest sued Meridian for breach of contract.  Southwest subsequently filed a
motion for partial summary judgment on two elements of its breach of contract
claim, i.e. (1) that a contract existed and (2) Meridian breached it.  The
court granted the motion.  Following a bench trial on damages and attorneys’
fees, the court rendered final judgment awarding Southwest $100,481.78 in
damages and attorneys’ fees plus pre- and post-judgment interest.

Analysis

In a single issue, Meridian challenges the trial
court’s order granting partial summary judgment decreeing that the August 22 letter
was a binding contract between Southwest and Meridian.[2]  The movant for traditional
summary judgment has the burden of showing there is no genuine issue of
material fact and it is entitled to summary judgment as a matter of law.  Tex.
R. Civ. P. 166a(c).  As the plaintiff moving for partial summary judgment on
its own cause of action, Southwest was required to conclusively prove the
elements on which it sought judgment.  See MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986).

We review a summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take
evidence favorable to the nonmovant as true and indulge every inference and
resolve every doubt in its favor.  Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548–49 (Tex. 1985).

The elements of a valid contract are (1) an offer,
(2) acceptance in strict compliance with the terms of the offer, (3) meeting of
the minds, (4) a communication that each party consented to the terms of the
contract, (5) execution and delivery of the contract with an intent it become
mutual and binding on both parties, and (6) consideration. Angelou v.
African Overseas Union, 33 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.]
2000, no pet.).  Meridian’s appellate argument focuses on the fifth element.

Meridian argues that a material fact issue exists
regarding the intent of the parties to be bound.  Southwest contends the August
22 letter “objectively manifests Meridian’s intent to be bound, and Meridian
failed to present probative evidence creating a genuine issue of fact that the
[August 22 letter] was predicated or conditioned upon execution of additional
documents, or that Meridian did not intend to be bound by its signature.”

As a general rule, because intent to be bound is a
question of fact, summary judgment would not be appropriate.  See Gaede v.
SK Invs., Inc., 38 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2001,
pet. denied); see also Fort Worth Indep. Sch. Dist. v. City of Fort Worth,
22 S.W.3d 831, 846 (Tex. 2000); Foreca, S.A. v. GRD Dev. Co., 758 S.W.2d
744, 746 (Tex. 1988); Williston on Contracts § 4:11 (4th ed. 2007) (“Ultimately,
the question is one of fact as to the intention of the parties.”). 
Nevertheless, in some cases, a court may determine the intentions of the
parties as a matter of law.  WTG Gas Processing, L.P. v. ConocoPhillips Co.,
309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing Foreca,
758 S.W.2d at 746).  We may do so if an unambiguous writing shows the parties
intended to be bound by contract.  Hardman v. Dault, 2 S.W.3d 378, 380
(Tex. App.—San Antonio 1999, no pet.) (citing Padilla v. LaFrance, 907
S.W.2d 454, 461–62 (Tex. 1995)); see Gilbert v. Pettiette, 838 S.W.2d
890, 893 (Tex. App.—Houston [1st Dist.] 1992, no writ); Henry C. Beck Co. v.
Arcrete, Inc., 515 S.W.2d 712, 716 (Tex. Civ. App.—Dallas 1974, writ dism’d).
 Whether a contract is ambiguous is a question of law, and a contract is
ambiguous if it is reasonably susceptible to more than one meaning.  Coker
v. Coker, 650 S.W.2d 391, 393–94 (Tex. 1983).

The August 22 letter set forth the following terms:
(1) type and number of rail cars Meridian was leasing; (2) monthly charge; (3)
length of the contract; (4) location where the cars would be delivered; (5)
condition in which the cars must be returned; and (6) responsibility for the
cost of the cars being placed into service.  In the letter, Southwest also
requested Meridian to acknowledge its acceptance and return the letter to
Southwest.  Finally, in the letter, Southwest informed Meridian, “Upon your
acceptance of this confirmation letter a formal rider and master lease will be
forwarded to you.”  A representative of Meridian signed the letter.

In sum, Meridian “acknowledge[d] its acceptance” of
the six terms set forth in the August 22 letter.  “Acknowledge” means “[t]o recognize
(something) as being factual or valid.”  Black’s Law Dictionary 25 (9th ed.
2009).  “Acceptance” means “[a]n offeree’s assent, either by express act or by
implication from conduct, to the terms of an offer in a manner authorized or
requested by the offeror, so that a binding contract is formed.”  Id. at
13.  Under the unambiguous language of the August 22 letter, Meridian, by
countersigning the letter, recognized the validity of its assent to the terms
set forth in that letter.

Meridian nevertheless argues that reference to the
formal rider and master lease indicates the parties contemplated creation of
additional documents was necessary to form a contract.  However, unlike cases
in which courts have held that a fact issue existed on the question of whether
the parties intended to be bound, there is no language in the August 22 letter
providing the parties’ agreement was “subject to” approval of the master lease. 
See, e.g., Foreca, 758 S.W.2d at 745–46 (raising question
of whether “subject to legal documentation” meant formal document was (1) a
condition precedent to formation of contract or (2) merely a memorialization of
already enforceable contract; and holding court of appeals erred by concluding
language established as a matter of law that no sales agreement had been
reached); Martin v. Black, 909 S.W.2d 192, 196 (Tex. App.—Houston [14th
Dist.] 1995, writ denied) (holding phrase in a mediation term sheet “subject to
securing documentation satisfactory to the parties” created fact issue
concerning parties’ intentions).

Instead, the present case is more analogous to the
situation presented in Herring v. Heron Lakes Estates Owners Ass’n, Inc.,
No. 14-09-00772-CV, 2011 WL 2739517 (Tex. App.—Houston [14th Dist.] Jan. 4,
2011, no pet.) (mem. op.).  Herring involved a breach of contract action
based on the homeowner defendants’ refusal to comply with a settlement
agreement with the homeowner’s association.  See id. at *1.  The trial
court granted partial summary judgment in favor of the association.  See id.

In the original action, when the trial court
requested the parties to place their agreement on the record, counsel dictated
a number of terms on which the parties had allegedly agreed, including the
requirement that the defendant homeowners “‘will ratify the CCRs and that
ratification will be done when we reach a settlement on this.’”  Id.  Also,
at one point early in the hearing, the homeowners’ attorney explained that the
agreement the parties had reached was for the homeowners to ratify the covenants,
conditions, and restrictions and “‘that ratification will be done when we reach
a settlement on this because—which is in the next week or so, and that—and that
assessments under those CCRs will begin, prospective only, when we enter into
the settlement agreement going forward.’”  Id. at *4.  The association’s
attorney also stated, “‘[W]e will prepare the appropriate settlement documents
to be agreed upon between the parties to support our settlement agreements.’”  Id.

On appeal, this court upheld the trial court’s grant
of partial summary judgment on the association’s breach of contract claim.  See
id. at *6.  We rejected the homeowners’ argument that the association’s
attorney’s statement quoted above and the phrase “when we reach a settlement”
indicated the parties did not intend to enter into a settlement agreement at
the hearing.  Id. at *4.  Instead, we held, “Viewing the transcript as a
whole, there is only one reasonable interpretation: the partie[s] intended to enter
into a binding settlement agreement, and the numerous terms dictated into the
record were not conditioned on any future negotiations or execution of formal
settlement documents.”  Id.

Just as the reference to additional documents did not
create a fact issue on whether the parties intended to be bound by the
settlement agreement in Herring, the reference to the formal rider and
master lease does not create a fact issue on whether the parties intended to be
bound by the August 22 letter in the present case.

Meridian also directs our attention to Walker’s
affidavit in which he stated he understood that a final agreement was
contingent on both parties executing a master lease.  We have, however,
concluded above that, by virtue of the unambiguous language of the August 22
letter, Meridian, by countersigning, recognized the validity of its assent to
the terms set forth therein.  We may not consider extrinsic evidence
contradicting the unambiguous language of a contract.  Nat’l Union Fire Ins.
Co. of Pitts., Penn. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995). 
Therefore, Walker’s affidavit does not raise a fact issue regarding Meridian’s
intent to be bound by the terms of the August 22 letter.

Accordingly, we overrule Meridian’s sole issue and
affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

 

 

Panel consists of Chief
Justice Hedges and Justices Seymore and Boyce.

 









[1] We refer to the executed
confirmation letter as “the August 22 letter.”





[2] The court further decreed
that Meridian breached the contract.  On appeal, Meridian does not argue that,
even if a contract existed, Southwest failed to conclusively prove Meridian breached
the contract.