**Affirmed and Memorandum Opinion filed May 27, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00838-CV

## MATTHEW KENDALL AND KENDALL ACQUISITION COMPANY, LLC, Appellants

## V.

## JAMES T. LEWELLEN, Appellee

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2012-72621**

## MEMORANDUM OPINION

Appellants Matthew Kendall and Kendall Acquisition Company, LLC[1] challenge the trial court's take-nothing judgment on their claims against appellee James T. Lewellen. The Kendall parties assert eight issues, each premised on the argument that a letter agreement between Kendall and Lewellen was a binding,

---

[1] Appellants Kendall and Kendall Acquisition Company shall be referred to collectively as the Kendall parties.

enforceable contract. We affirm.

## I. BACKGROUND

Kendall wanted to buy Turn-Key Specialists, Inc.[2] To this end, Kendall, based on his understanding that Lewellen "own[s] a substantial majority of the issued and outstanding stock" of Turn-Key, sent Lewellen a letter agreement proposing terms for the acquisition of the assets and liabilities of Turn-Key. The letter agreement contemplated that future "Definitive Agreements" would be drafted regarding the transaction, but also stated that the agreement was "binding" even if the parties did not execute Definitive Agreements. Lewellen signed the letter agreement.

After negotiations fell apart, the Kendall parties[3] sued for breach of the letter agreement, asserting claims for breach of contract, promissory estoppel, and fraud. After a bench trial, the trial court, concluding the letter agreement was not a binding, enforceable contract, signed a take-nothing judgment against the Kendall parties and filed findings of fact and conclusions of law.[4]

---

[2] Turn-Key was a defendant in the trial court and was originally an appellee in this court. After this appeal was originally submitted, the Kendall parties filed a suggestion of bankruptcy as to Turn-Key, after which we abated this appeal due to the automatic bankruptcy stay under title 11, United States Code, section 362. 11 U.S.C. § 362. More than a year later, on motion by the Kendall parties, we dismissed Turn-Key from this appeal and reinstated the appeal as to Lewellen only. Accordingly, Lewellen is the sole appellee in this case.

[3] Kendall originally filed this lawsuit, in which Kendall Acquisition Company later intervened. The Kendall parties jointly asserted claims in their second amended petition, which was their live pleading at trial.

[4] The trial court rendered judgment that the Kendall parties take nothing on June 10, 2016. In the judgment, the trial court stated that it "decided all questions of fact and law as to these parties," i.e., the Kendall parties, Lewellen, and Turn-Key, but also made written indications in the judgment that it was not final, including crossing out the word "Final" on multiple occasions and making reference to "when this judgment becomes final." At the time of the trial court's judgment, claims of intervenors Michael J. Maloney and Associates, L.L.P. and Axelrad Law Firm, PLLC remained pending against the Kendall parties. On July 22, 2016, the trial court signed an order severing the claims of these intervenors, thereby disposing of all

## II. ANALYSIS

The Kendall parties complain that the trial court committed reversible error in several respects. First and foremost, although the trial court concluded that no binding and enforceable agreement existed between the parties, the Kendall parties argue the letter agreement was a binding contract. Lewellen counters that the letter agreement was instead an initial step in negotiations and was not intended to be binding as to the sale of the company.[5] While a trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing evidence supporting a jury's answer, *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994), conclusions of law are reviewed de novo and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Whether the parties intended to be bound by an agreement is often a question of fact, particularly in the context of preliminary negotiations. *See Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 745 (Tex. 1988). Addressing

---

remaining claims and parties. *See Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 312 (Tex. 1994) ("When the problem is that an otherwise final judgment fails to dispose of all parties, the court may make the judgment final for purposes of appeal by severing the causes and parties disposed of by the judgment into a different cause.").

[5] The parties dispute whether the letter agreement is properly characterized as a "letter of intent." Whether it is or not is immaterial; regardless of its proper title, the letter agreement is analyzed as any other writing when determining whether a binding and enforceable contract was created. *See McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) ("Agreements to enter into future contracts are enforceable if they contain all material terms."); *see also John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("[T]he use of a letter of intent is not without risk. Absent careful drafting, the parties may find themselves bound by a letter agreement that does not contain all of the protections for which they would normally negotiate or for which due diligence is incomplete. Under some circumstances, a binding contract may be formed if the parties agree on the material terms, even though they leave open other provisions for later negotiation.").

a similar scenario in *Foreca*, the supreme court quoted Professor Corbin as follows:

> One of the most common illustrations of preliminary negotiation that is totally inoperative is one where the parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. *Often it is a difficult question of fact whether the parties have this understanding*; and there are very many decisions holding both ways. These decisions should not be regarded as conflicting, even though it may be hard to reconcile some of them on the facts that are reported to us in the appellate reports. *It is a question of fact that the courts are deciding, not a question of law; and the facts of each case are numerous and not identical with those of any other case. In very many cases the question may properly be left to a jury.*

*Id.* (quoting Arthur L. Corbin, *Corbin on Contracts*: A Comprehensive Treatise on the Working Rules of Contract Law § 30 at 97 (rev. ed. 1963)). That said, when a writing is unambiguous, the intent to be bound may be decided as a matter of law. *Foreca*, 758 S.W.2d at 746 ("In some cases, of course, the court may decide, as a matter of law, that there existed no immediate intent to be bound.").

The Kendall parties contend the letter agreement in this case unambiguously demonstrates the parties' intent that the letter agreement be binding as a matter of law. The Kendall parties point to paragraph 8, which states in part, "This Letter Agreement shall be binding upon the parties hereto, their heirs, successors and assigns and [Kendall Acquisition Company] shall have the right to seek specific performance hereof, even in the event that the parties do not execute Definitive Agreements." Based on this "clear and unambiguous" language, the Kendall parties argue the letter agreement is binding in all respects, including for the sale of the company, as a matter of law.

4

Other language in the agreement, however, suggests otherwise. *Cf. Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983) ("Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract *as a whole* in light of the circumstances present when the contract was entered.") (emphasis added). Paragraph 6 provides:

> **Term.** This Letter Agreement will be effective as of the date of your acceptance hereof and shall, unless extended by the parties, terminate on the earlier to occur of (i) mutual written agreement of the parties, or (ii) the execution of the Definitive Agreements, or (iii) six (6) months from the date of execution hereof.

Paragraph 6 implicitly contemplates the agreement expiring without the sale of the company. Simply put, if after six months the parties had not signed Definitive Agreements or otherwise agreed to extend the agreement, the agreement would expire by its own terms without sale of the company. This indicates that, at the very least, the parties did not intend the contract to be binding as to the sale of the company. *See John Wood Group USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 18–19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (fact that "Paragraph 4 of the letter agreement contemplates that it could terminate before a sale was made" supported conclusion that letter agreement was not intended to be binding as to sale of company); *see also Karns v. Jalapeno Tree Holdings, L.L.C.*, 459 S.W.3d 683, 693 (Tex. App.—El Paso 2015, pet. denied) (termination provision in letter of intent indicated letter was not binding as to sale of company).

Other provisions of the agreement also recognize that the sale of the company might not occur. Paragraph 5, entitled Exclusivity, states that Lewellen would not negotiate with other potential buyers until the letter agreement expired. Given that the letter agreement, by its terms, could expire without the company being sold, this paragraph suggests that Lewellen could negotiate with other buyers

if the deal with the Kendall parties did not close within six months. This again indicates that the letter agreement was not intended to be a binding agreement to sell the company. Indeed, the Exclusivity paragraph specifically allows that the deal might not close: "The Company acknowledges that [Kendall Acquisition Company] will expend substantial time, energy and effort for which it will not be adequately compensated *in the event that the closing does not occur* through no fault or failure of [Kendall Acquisition Company] and that [Kendall Acquisition Company] will have foregone other potentially lucrative opportunities to pursue the transaction contemplated hereunder." (emphasis added). *See John Wood Group*, 26 S.W.3d at 18–19 (fact that letter agreement included provision stating "if the transactions contemplated hereby do not close for any reason" supported conclusion that letter agreement was not intended to be binding as to sale of company).

Even the paragraph on which the Kendall parties base their argument indicates that the letter agreement was not intended to be binding in its entirety. Paragraph 8 states:

> **Entire Agreement; Binding Effect; Governing Law.** This Letter Agreement constitutes the entire agreement between the parties, and supersedes all prior oral or written agreements, understanding, representations and warranties, and courses of conduct and dealing between the parties on the subject matter herein. Except as otherwise provided herein, this Letter Agreement may be amended or modified only in a written document executed by all of the parties. *This Letter Agreement shall be binding upon the parties hereto, their heirs, successors and assigns and* **[*Kendall Acquisition Company*]** *shall have the right to seek specific performance hereof, even in the event that the parties do not execute Definitive Agreements.* In all events, [Kendall Acquisition Company] shall have the right but not the obligation to waive any terms or conditions set forth herein that are for its benefit. *All obligations of the parties hereunder are to use commercially reasonable best efforts to effect the transactions*

6

**contemplated herein.** This Letter Agreement will be governed by and construed under the laws of the State of Texas without regard to conflicts of laws principles.

(emphasis added). While this paragraph states the agreement is binding, it also provides that "[a]ll obligations of the parties hereunder are to use commercially reasonable best efforts to effect the transactions contemplated herein." Whether "hereunder" applies to the letter agreement as a whole or simply to paragraph 8, this language suggests that the only "binding" obligations the parties agreed to are to "use commercially reasonable best efforts to effect the transactions contemplated herein."[6]

Although there is language in paragraph 8 indicating that the letter agreement is binding in its entirety, there is other language in paragraph 8 and elsewhere in the agreement indicating it is not, particularly with regard to the sale of the company. Viewing the letter agreement as a whole, we conclude it is not unambiguously enforceable in its entirety as a matter of law, but rather a fact issue exists regarding whether and to what extent the parties intended the agreement to be binding. *See Foreca*, 758 S.W.2d at 746 (because writing was not unambiguously binding, intent was question of fact). The Kendall parties' sole argument as to intent is that the letter agreement is binding as a matter of law; they do not argue that the facts demonstrate that the parties intended the letter agreement to be binding, nor do they challenge the evidentiary sufficiency[7] of

---

[6] We understand the Kendall parties' brief to seek enforcement of the letter agreement in its entirety, and not to seek partial enforcement of the letter agreement solely as to the requirement that the parties "use commercially reasonable best efforts to effect the transactions contemplated herein." Accordingly, we do not address whether this provision, on its own, is binding as a matter of law.

[7] While the Kendall parties argue that several of these findings are irrelevant because the letter agreement is binding as a matter of law, they do not challenge the legal or factual sufficiency of the evidence supporting the findings.

numerous findings by the trial court showing that the parties did not intend the agreement to be binding.

Accordingly, we overrule the Kendall parties' challenge on the grounds that the letter agreement was wholly binding as a matter of law. Because each of the Kendall parties' remaining issues depends on the letter agreement being a binding contract, we do not address these issues. Tex. R. App. P. 47.1.

### III. CONCLUSION

We affirm the trial court's judgment as challenged on appeal.


/s/ Charles A. Spain
   Justice


Panel consists of Justices Zimmerer, Spain, and Poissant.

8