**In re Lee Charles HUDGINS, and wife, Nancy Day Hudgins, Debtors.**

Lee Charles HUDGINS, and wife, Nancy Day Hudgins, Plaintiffs,

v.

**SECURITY BANK OF WHITESBORO, Respondent.**

Bankruptcy No. 94–41099.
Adv. No. 94–4164.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Oct. 6, 1995.

J. Bennet White, Wilson, Miller, Spivey, Sheehy & Knowles, Tyler, TX, for Debtors.

Tom Thomas, Thomas, Sheehan & Culp, L.L.P., Dallas, TX, for Security Bank of Whitesboro.

## *OPINION*

DONALD R. SHARP, Bankruptcy Judge.

COMES NOW before the Court for consideration the Complaint for Declaratory Judgment filed by Lee and Nancy Hudgins ("Debtors") and the Motion to Modify Stay filed by the Security Bank of Whitesboro ("Bank"). These matters were consolidated for hearing pursuant to agreement with counsel since they both deal with the same fact situation. This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

## I. *COMPLAINT FOR DECLARATORY JUDGMENT*

Debtors filed this Complaint for Declaratory Judgment against Bank raising several issues. Both parties agreed that the only issue to be determined by the Court at this point is whether the parties reached an agreement, constituting a contract, at the conclusion of mediation. Debtors assert an agreement, Bank denies any agreement was reached.

### A. *RELEVANT FACTS*

Debtors and Bank were involved in protracted litigation in Grayson County District

Court in 1993. As part of that proceeding, the parties entered into court ordered mediation on December 23, 1993. The mediation session lasted approximately 14 hours ending in the early morning of December 24, 1993. At the conclusion of the mediation, the parties entered into a "Settlement Agreement," attached as Exhibit A.

The essential terms of the "Settlement Agreement" are as follows:

(1) Bank shall release all cattle and farm equipment pledged to loan in return for Debtors replacing therewith real property (mutually agreeable) worth $400,000. If parties cannot agree, the decision shall be solely that of the mediator whose decision shall be binding.

(2) The parties shall enter into an Agreed Judgment providing as follows: Judgment for the Bank for $815,000 together with foreclosure of lien on all real estate including that to be pledged hereunder for release of cattle.

(3) Any agreed judgment shall be signed by the trial judge held in escrow by mediator but may not be abstracted or recorded or any collection effort made upon same so long as Debtors pay Bank the sum of $600,000 on or before June 30, 1994, the judgment shall be of no further effect and shall be released.

Additionally, the "Settlement Agreement" contained language "subject to the terms of final settlement documents" and "this is an agreement in principle and is subject to agreement to terms of final settlement documents."

The "Settlement Agreement" was signed by the Debtors and by James Lederer as the Bank's attorney. The Court does not find the testimony that Mr. Lederer was unauthorized to bind the Bank by signing the "Settlement Agreement" credible. Mr. Lederer was the Bank's attorney and would not have represented the Bank in a 14 hour mediation session if he were not authorized to make binding decisions for the Bank. Moreover, Bill Stephens, the Bank's Chairman of the Board, participated in the mediation via telephone and at no point did he notify Debtors that Mr. Lederer lacked authority to bind the Bank by signing the "Settlement Agreement."

Likewise, the Court does not believe Mr. Lederer's testimony that he stated to Roger Sanders, Debtors' attorney, at the time of signing the "Settlement Agreement" that they had reached no agreement at all. None of the parties to the mediation heard such a statement. Furthermore, the Court does not believe an attorney of Mr. Lederer's experience and reputation would sign a document entitled "Settlement Agreement" if no agreement had actually been reached.

Shortly after signing the "Settlement Agreement" Debtors inserted the language "signed contingent upon bank providing confidentiality of terms of judgments and Bill Stephens signing." Debtors never actually required Bill Stephens' signature and have stated that they waive that requirement. Confidentiality of the terms of judgment remained a contested issue and appears to have been a significant factor in the failure of the "Settlement Agreement." Debtors were concerned with keeping the terms of the judgment confidential because they thought it might affect their ability to obtain financing to pay Bank the $600,000 provided in the "Settlement Agreement."

Mr. Lederer then inserted the language "contingent on final settlement with Pete Hudgins" under his signature. Pete Hudgins was a party to the same mediation session. Pete Hudgins and Bank entered into a similar "Settlement Agreement" at the conclusion of the mediation session.

Following mediation, the Bank undertook certain steps consistent with the terms of the "Settlement Agreement." Bank inspected land owned by Debtor that could be pledged in return for the release of cattle and farm equipment. Bank drafted certain documents contemplated by the "Settlement Agreement." In January, 1994, Bank represented to Judge Grisham that the "Settlement Agreement" could be finalized within a few days.

However, at some point relations between the parties broke down and the terms of the "Settlement Agreement" were never fulfilled.

## B. DISCUSSION

The Court must determine whether the "Settlement Agreement" represents an actual agreement between the parties constituting an enforceable contract. The Bank maintains that there was no agreement actually reached, the "Settlement Agreement" was part of ongoing negotiations, simply an "agreement to agree."

### 1) *Meeting of Minds*

■ In order for there to be a valid contract, there must be a meeting of the minds of the parties. The determination of whether there was a meeting of the minds must be based on objective standards of what the parties said and did and not on their alleged subjective states of mind. *Adams v. Petrade Intern., Inc.,* 754 S.W.2d 696, 717 (Tex.App.—Houston [1st Dist.] 1988, writ den'd); *Slade v. Phelps,* 446 S.W.2d 931, 933 (Tex.Civ.App.—Tyler 1969, no writ).

The Court has no doubt that at the conclusion of mediation all parties believed they had reached an agreement which resolved all issues between the parties. All testimony to the contrary simply was not credible. The Court does not believe that at the conclusion of a 14 hour mediation session the parties would sign a document titled "Settlement Agreement" if there was no such agreement.

Moreover, the Bank undertook actions in compliance with the "Settlement Agreement" including inspecting property and drafting documents contemplated by the "Settlement Agreement."

■ The fact that the "Settlement Agreement" contemplated further documentation is not problematic. These documents were simply supposed to formalize the terms of the "Settlement Agreement" and execute certain provisions of the "Settlement Agreement." A provision for future more formal documentation does not establish as a matter of law that no agreement has been reached. *Foreca, S.A. v. GRD Development Co., Inc.,* 758 S.W.2d 744, 746 (Tex.1988); *Scott v. Ingle Bros. Pacific, Inc.,* 489 S.W.2d 554, 556–557 (Tex.1972); *Murphy v. Seabarge, Ltd.,* 868 S.W.2d 929, 933 (Tex.App.—Houston [14th Dist.] 1994, rehearing den'd., error den'd.).

■ Actions may manifest an intent to be bound to an agreement, even though the parties may expressly provide a formal contract will be executed in the future. *Id.* The Court believes Bank's actions expressed their belief that an agreement had been reached. Therefore, the Court finds that there was a meeting of minds between the parties and the "Settlement Agreement" in fact represented the agreement between the parties.

Having made that determination, the Court must next determine whether some operation of law prevented the "Settlement Agreement" from becoming a binding contract.

### 2) *Conditional Acceptance*

The Bank asserts that the language inserted below the signatures of the Hudgins and Mr. Lederer are conditions precedent which must be satisfied before a contract exists. The conditions were never met, the Bank argues, therefore no contract exists.

■ A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate either to the formation of contracts or to liability under them. *Hohenberg Bros. Co. v. George E. Gibbons & Co.,* 537 S.W.2d 1, 3 (Tex.1976). When a condition is a condition precedent to the formation of a contract, no binding contract will arise until the conditions specified have occurred or have been performed. *Fred v. Ledlow,* 309 S.W.2d 490 (Tex.Civ.App.—San Antonio 1958); *Shaper v. Gilkison,* 217 S.W.2d 878 (Tex.Civ.App.—Austin 1949, writ ref. n.r.e.); *Couch v. Stewart,* 200 S.W.2d 642 (Tex.Civ.App.—Galveston 1947).

It is clear that the language inserted under the signatures "contingent upon" was an attempt by the parties to make their acceptance conditional, constituting conditions precedent to the formation of a contract. The Court must examine whether the failure of any of these conditions operated as a bar to the formation of a contract.

a) *Settlement with Pete Hudgins*

■ After signing the "Settlement Agreement," Mr. Lederer inserted the phrase "contingent upon a final settlement with Pete Hudgins" under his signature. Mr. Lederer had already accepted the contract when he previously signed. Although this had occurred only a few moments earlier, the Court does not believe that acceptance can be made conditional after the fact.

Nevertheless, a similar "Settlement Agreement" was reached between the Bank and Pete Hudgins at the same mediation session. The Court believes that this satisfies the condition and therefore, this condition does not operate as a bar to formation of the contract.

b) *Bill Stephens Signature*

■ At the time of signing the "Settlement Agreement" Debtors inserted the language "signed contingent upon Bill Stephens signing." Bill Stephens is the Chairman of the Board of Bank, he never signed the "Settlement Agreement."

■ This language clearly makes Bill Stephens' signature a condition precedent to the formation of a contract. If an instrument is signed or delivered on the express condition that it is not to be binding as a contract until it is signed by another person, there is no contract until the instrument is signed by the person specified. *Baccus v. Plains Cotton Cooperative Association,* 515 S.W.2d 401, 402–3 (Tex.Civ.App.—Amarillo 1974).

■ However, performance of a condition precedent can be waived or modified by the party to whom the obligation was due by word or deed. *Ames v. Great Southern Bank,* 672 S.W.2d 447, 449 (Tex.1984). The Debtors are the party to whom the obligation was due. Debtors testified that they waived the condition of Bill Stephens signature. Moreover, Debtors never actually required Stephens' signature before attempting to fulfill their duties under the "Settlement Agreement." Debtors' behavior was wholly consistent with waiver.

Consequently, the Court finds that the Debtors waived the condition precedent of Bill Stephens' signature and, thus, this condition did not prevent formation of the contract.

c) *Confidentiality*

■ At the time of signing the "Security Agreement," Debtors inserted the language "signed contingent upon Bank providing confidentiality of terms of judgments." This language appears to be one of the most disputed terms in the "Settlement Agreement," and appears to be one of the major reasons the terms of the "Settlement Agreement" were never carried out.

■ The "Settlement Agreement" provided that the parties would enter an Agreed Judgment providing judgment for the Bank in the amount of $815,000. The Agreed Judgment would be signed by the trial judge but would not be abstracted or recorded or any collection effort made so long as Debtors paid Bank $600,000 on or before June 30, 1994. However, any judgment signed by the trial court had to be entered on the court's docket and, therefore, became a public document. This, perhaps, was not clearly understood by the parties at the time of entering the "Settlement Agreement."

Debtors were very concerned that the terms of the Agreed Judgment remain confidential. They feared that if news of the judgment got out, they would have difficulty obtaining the financing they needed to pay Bank the $600,000. Consequently, Debtors inserted the confidentiality condition.

The Bank asserts that the confidentiality condition is a condition precedent to the for-

mation of a contract. The Bank further asserts that it is impossible to satisfy the condition given the term requiring the parties to enter an Agreed Judgment. Therefore, no contract was formed.

 At first blush, the two terms appear to be inconsistent. However, it is a rule of construction that a forfeiture by finding a condition precedent is to be avoided when possible under another reasonable reading of the contract. *Schwarz–Jordan, Inc. v. Delisle Const. Co.*, 569 S.W.2d 878, 881 (Tex. 1978). The Court believes another reasonable reading of the confidentiality term may make the satisfaction of the condition possible.

The Debtors' main concern with confidentiality, is that they be able to obtain financing. Although the Agreed Judgment would be recorded on the court docket sheet, it would not be recorded anywhere else. As long as Bank does not publicize the terms of the Agreed Judgment, it would not become common knowledge to the banking community. The Court was presented no evidence to show the Agreed Judgment would prevent Debtors from obtaining the necessary financing. Therefore, it may be possible to satisfy the confidentiality condition.

 If it is in fact impossible to satisfy the confidentiality condition, that does not necessarily prevent the formation of a contract. Where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg Bros. Co.*, 537 S.W.2d at 3. Breach of a covenant does not prevent formation of a contract.

 As a final note, Bank attempts to argue that the inconsistency between the Agreed Judgment term and the confidentiality term makes performance impossible, therefore there is no contract. As discussed earlier, there may be an interpretation of the two terms which makes performance possible. In any event, impossibility of performance may provide an excuse for performance, it does not prevent formation of a contract.

Therefore, the Court believes that the confidentiality condition did not prevent formation of the contract.

In conclusion, the court finds that there was a meeting of minds between parties and the parties reached an agreement as set forth in the "Settlement Agreement." Moreover, there was no operation of law which prevented the "Settlement Agreement" from becoming a binding contract. It is also apparent that the contract was immediately breached. However, the Court is not required to deal with that issue at this time. It is therefore

ORDERED that the Court hereby finds the parties entered into a binding contract, the terms of which are fairly represented in the "Settlement Agreement."

## II. *MOTION TO MODIFY STAY*

The Bank filed this Motion to Modify Stay seeking a modification of the stay to permit the Bank to file a Substitute Trustee's Deed to finalize a foreclosure on certain pieces of real property. Debtors object to the requested modification of the stay, arguing that the foreclosure was improper.

### A. *RELEVANT FACTUAL BACKGROUND*

Debtors are liable to the Bank on three separate notes. Each of these notes were in default pre-petition and are described as follows:

(a) Promissory note payable to Bank dated January 11, 1991, in the original principal sum of $360,000. This is a secured note, collateralized by three tracts of land in Grayson County, Texas, totaling approximately 515.4 acres.

(b) Promissory note dated July 11, 1992, payable to Bank in the original principal sum of $400,000. Contemporaneous with the execution of this note, Debtors execut-

ed a Revolving Credit Agreement; a Security Agreement; an Addendum to the Security Agreement; and a Renewal and Extension Second Lien Deed of Trust. While the Deed of Trust covers the same real property which collateralizes the $360,000 note described above, the other security documents also gave Bank a collateral interest in any and all cattle now owned or hereafter acquired; including but not limited to 240 head of steers and 140 head of heifers; plus certain farm equipment as specifically described in that Security Agreement. The Bank also filed its UCC Financing Statements.

(c) Promissory Note dated February 5, 1993, payable to Bank in the original principal amount of $75,000. This note was collateralized by a First Lien Deed of Trust on approximately 102.2 acres of land in Grayson County, Texas.

The Bank, by letter dated July 23, 1993, notified Debtors that they were delinquent on the notes and that the Bank was exercising its right to accelerate the notes. That letter also made demand for payment.

The Bank, by letter dated September 13, 1993, notified Debtors that both the 515.4 acre tracts and the 102.2 acre tract would be sold at a public foreclosure sale at the Grayson County Courthouse on October 5, 1993, between 10:00 a.m. and 1:00 p.m. The Substitute Trustee posted the notice of sale at the Courthouse on September 13, 1993.

The Substitute Trustee hired an attorney, A.L. Vickers, to assist him with the foreclosure. On October 5, 1993, the Substitute Trustee and Mr. Vickers began the foreclosure sale shortly before 12:00 p.m. and concluded the sale approximately 12:20 p.m. The Bank was the successful bidder for both tracts paying $250,125 for the 515.4 acre tract and $76,500 for the 102.2 acre tract.

■ Debtors obtained a Temporary Restraining Order enjoining the foreclosure from the District Court on October 5, 1993, at approximately 11:44 a.m.[1] However the Order stated that it would not be effective until Debtors posted a $500 bond. Debtors paid the bond at 1:09 p.m.

Debtors' attorney attempted to notify Mr. Vickers of the Temporary Restraining Order prior to conclusion of the foreclosure. He was unable reach Mr. Vickers and left a message simply asking Mr. Vickers to return his call. Debtors' attorney made no attempt to contact the Bank and notify it of the Temporary Restraining Order. Neither the Bank nor Mr. Vickers received notice of the Temporary Restraining Order until October 6, 1993.

The Bank has not filed a Substitute Trustee's Deed to finalize the foreclosure due to the Temporary Restraining Order and Debtors' subsequent petition in bankruptcy imposing the automatic stay.

## B. DISCUSSION

■ It seems clear to the Court that the foreclosure sale was properly conducted. Debtors were given proper notice of the impending foreclosure and the property was sold at a regularly conducted public auction.

Therefore, the primary issue before the Court is whether the Temporary Restraining Order barred the completion of the foreclosure sale.

■ By its own terms, the Temporary Restraining Order did not become effective until Debtors filed a $500 bond with the court clerk. Before a temporary restraining order may issue, the petitioner (the Debtors) must file an injunction bond. Tex.R.Civ.P. 684. Generally, an injunction issued without bond

1. The Order contained a notation that it was signed at 1:00 p.m. However, the Order was file marked at 11:44 a.m. The Bank argues that the parole evidence rule prohibits the Court from considering testimony that establishes a time of signing contradictory to the time set on the face of the document. The Court believes the document is ambiguous on its face in that it appears to have been filed with the court clerk before being signed by the judge. Therefore, parole evidence can be considered by the Court. Testimony by Debtors' attorney in the District Court action clearly established that the Order was signed by the judge prior to being file marked. The Court therefore finds the Order was signed at approximately 11:44 a.m.

is void. *Goodwin v. Goodwin,* 456 S.W.2d 885 (Tex.1970). The bond was not filed until 1:09 p.m. Therefore, the Temporary Restraining Order was not effective until 1:09 p.m., that was too late to prevent the foreclosure which concluded at 12:20 p.m.

Moreover, the Bank did not receive notice of the Temporary Restraining Order until October 6, 1995. Since the foreclosure sale concluded before notice or service of the Temporary Restraining Order, the Temporary Restraining Order did not bar the sale. *Pioneer Building and Loan Ass'n v. Cowan,* 123 S.W.2d 726, 729–30 (Tex.Civ.App.—Waco 1938, writ dism'd judgm't cor.).

■ Having determined that the Temporary Restraining Order did not bar the foreclosure sale and that the foreclosure sale was properly conducted, the Court must next determine whether cause exists to modify the stay to permit Bank to file a Substitute Trustee's Deed.

■ The Court may modify the automatic stay for cause. 11 U.S.C. § 362(d)(1). However, the Bankruptcy Code does not define the term "cause." "Cause" under § 362(d)(1) is not limited to those situations where the property of a party lacks adequate protection in the bankruptcy estate. *Matter of Spencer,* 115 B.R. 471, 476 (D.Del.1990). Instead, "cause" encompasses many different situations, including the situation where naked legal title to property has passed into the estate but equitable title is held by another party. *Id.*

■ It is clear that the Bank obtained equitable title to the property at the conclusion of the foreclosure. However, the Debtors retain naked legal title because no trustee's deed has been filed. *Pioneer,* 123 S.W.2d at 730. Generally, the Court would modify the stay where the debtor retained only legal title and allow the party with equitable title to obtain legal title. However, the present case is distinguished from the general case.

Subsequent to obtaining equitable title, but prior to obtaining legal title, Bank entered into the "Settlement Agreement" with Debtors. As discussed above, the Court has determined that the "Settlement Agreement" is a binding contract. The "Settlement Agreement" provides that Bank will release all claims against the foreclosed property in exchange for payment of $600,000 by Debtors. Consequently, Bank has contracted away their rights to obtain legal title to the property in exchange for the payment of $600,000.

It is clear that the "Settlement Agreement" has now been breached. However, the parties presented this case to the Court with the joint request that the proceedings be bifurcated by determining only the issue of the existence vel non of a settlement through mediation. As a result of this request, the Court has not been called upon to determine which party breached the agreement. Therefore, the Court does not believe it is appropriate to modify the automatic stay until such time as the Court determines how the "Settlement Agreement" was breached and how that breach might affect the validity of the bank's foreclosure. It is therefore

ORDERED that the Motion to Modify Stay is hereby DENIED.

EXHIBIT A