In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00411-CV
_____

V. ROBERT FISHER JR., Appellant

V.

DAVID CARNAHAN, Appellee

_____

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 20-06-06973-CV

_____

**MEMORANDUM OPINION**

V. Robert Fisher Jr. appeals the trial court's First Amended Final Judgment ordering him to pay damages to David Carnahan for breaching a settlement agreement that the parties reached in a prior lawsuit. The trial court's amended judgment is based on jury findings that Fisher and Carnahan formed a binding settlement agreement and that Fisher failed to comply with that agreement. In two issues, Fisher argues the trial court's amended judgment should be reversed because the settlement agreement lacks an essential and material term–the time of

performance–because there is "no date by which payments were to start," which Fisher argues makes the agreement unenforceable. As discussed below, we affirm the trial court's amended judgment.

BACKGROUND

Fisher and Carnahan are business partners. They own equal interests in Titan Companies LLC ("Titan"), a demolition business based in Montgomery County. In 2017, Titan defaulted on a loan personally guaranteed by Fisher and Carnahan. The bank collected the debt from Carnahan by garnishing his personal accounts. Carnahan sought reimbursement of half the debt from Fisher; however, Fisher refused to pay his half of the debt back to Carnahan. Therefore, in 2017 Carnahan filed the first lawsuit and sued Fisher seeking equitable contribution for paying Titan's debt. The parties reached a settlement agreement during Fisher's deposition on June 5, 2019. Carnahan's attorney read the settlement terms into the deposition record and filed the certified deposition in the record of the underlying proceeding.

In the settlement agreement read into the record, the parties agreed, among other things, that Carnahan would release all claims and the 2017 lawsuit would be dismissed in exchange for Fisher executing a promissory note for $125,000 payable

2

to Carnahan in equal monthly installments over a five-year period.[1] The parties agreed the interest rate on the note would be 7 percent and, if Fisher defaulted, 15 percent. The parties also agreed to "work out formal documentation on the settlement terms" and execute those documents within two weeks. Thereafter, Carnahan sent Fisher drafts of the promissory note and release of claims, and Fisher refused to sign the documents or tender payments. Therefore, Carnahan filed the second lawsuit and sued Fisher for breach of contract, alleging Fisher failed to comply with the settlement agreement. Fisher then countersued for a declaration that the settlement agreement is not binding because it left out essential and material terms, such as the start date for payments, up for future negotiation.

The parties tried their claims to a jury. The jury considered several exhibits, including the settlement agreement. The jury heard testimony from six witnesses, including Fisher and Carnahan. Both parties testified they entered the settlement agreement intending to resolve the underlying 2017 lawsuit in exchange for Fisher paying $125,000 to Carnahan. Fisher testified that he and his attorney (Jamie McBride), and Carnahan and his attorney (Randall Poelma) were all in the conference room when Carnahan's attorney read the settlement terms verbatim into

---

[1] The parties agreed to other terms that we need not discuss to resolve Fisher's issues on appeal.

3

the deposition record before the court reporter. Fisher testified that he never objected to the settlement terms after they were read into the record. Fisher agreed that he did not object to the interest rates that were read into the record. Fisher also agreed that the settlement agreement that was read into the record did not include any delayed start date for when payments would begin. Fisher further agreed that his attorney was acting on Fisher's behalf and was authorized to agree to the terms of the settlement agreement that Carnahan's attorney, Mr. Poelma, read into the record. More specifically, when Fisher was asked "… when you had Mr. McBride, on your behalf, say, "we agree with everything that Mr. Poelma has said and we agree to all the terms", you never said anything to the contrary; true?" Fisher responded: "I did not."

However, contrary to the specific settlement terms that were read into the record on June 5, 2019, Fisher testified that after receiving the proposed settlement documents and promissory note, he objected to the documents and refused to sign them. More specifically, Fisher testified that he never agreed to the interest rates read in the settlement agreement record, so he objected to the interest rate on the note at 7 percent, and 15 percent in the event he defaulted on the note, as well as the payment schedule of the note. Instead, Fisher testified that he told Carnahan he could not start payments until he paid off his divorce settlement. Fisher admitted that

4

Carnahan later called him about the settlement documents and payments, and when Fisher was not represented by an attorney, the attorney who represented Carnahan would call him about the settlement documents and payments. Sometimes Fisher said he would hang up on the calls, and on others he would ignore the calls, or would not return the calls. Fisher admitted that he had never paid Carnahan a dime towards the settlement.

According to Fisher, since the parties failed to agree on the interest rate and the date payments would start, the parties failed to finalize their settlement agreement, which is why he refused to execute the promissory note or tender payments. Fisher admitted the express language of the settlement agreement does not indicate that the time of performance was an essential part of the agreement. Fisher admitted that even though he and Carnahan entered into the settlement agreement on June 5, 2019, as of the date he testified at trial, which was October 27, 2021, he had never made a payment under the terms of the agreement that were stated in the record at the conclusion of his deposition in June 2019.

When Carnahan rested, Fisher's counsel moved for a directed verdict, arguing the settlement agreement is not binding on the parties because the parties failed to agree on, among other things, the start date for payments. The trial court denied the motion. Fisher's counsel also moved for a directed verdict based on his claim that

5

there was no evidence he had violated the settlement agreement because he didn't have to make any payments since there was no agreement when payments were to be made. The trial court denied the motion. Likewise, during the formal charge conference, Fisher's counsel objected that there was no enforceable contract because: the agreement lacked the essential term regarding payment; there was no evidence that Fisher failed to comply with the agreement since there was no deadline by which he had to comply; and the jury could not determine an amount to be paid under an unenforceable contract. All three objections were overruled by the trial court. The jury found Fisher and Carnahan agreed to bind themselves to an agreement to settle the underlying proceeding. The jury also found Carnahan complied with the agreement, Fisher did not, and Carnahan should recover $128,450 for Fisher's noncompliance. Fisher filed a Motion for Judgment Notwithstanding the Verdict in which he elaborated on the arguments he made during trial. The trial court denied the motion and signed a First Amended Final Judgment in accordance with the jury's verdict. This appeal followed.

## ANALYSIS

In issue one, Fisher argues the trial court's amended judgment should be reversed since the jury's verdict was not supported by legally sufficient evidence, because the settlement agreement is unenforceable for lack of essential and material

6

terms. Fisher contends, since the parties failed to agree on the start date for payments, the settlement agreement is simply an unenforceable "agreement to agree." We disagree.

Under Rule 11, agreements to settle pending litigation are enforceable if "in writing, signed and filed with the papers as part of the record[]" or "made in open court and entered of record." Tex. R. Civ. P. 11; *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018). Rule 11 agreements have long been recognized as an effective tool for finalizing settlements by objective manifestation so that the agreements themselves do not become sources of controversy. *Knapp Med. Ctr. v. De La Garza*, 238 S.W.3d 767, 768 (Tex. 2007) (citation omitted). Courts have a ministerial duty to enforce valid Rule 11 agreements. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied).

Rule 11 agreements are construed under the same rules as a contract, with the court's primary concern being to ascertain the parties' true intent as expressed in the instrument. *Shamrock*, 540 S.W.3d at 560; *Murphy Explor. & Prod. Co.—USA v. Adams,* 560 S.W.3d 105, 108 (Tex. 2018) (citation omitted). If a court determines the contract's language can be given a certain or definite legal meaning or

interpretation, then the contract is unambiguous, and should be construed as a matter of law. *Shamrock*, 540 S.W.3d at 561. If the court determines the contract is subject to more than one reasonable interpretation, the contract is ambiguous, creating a fact issue on the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citation omitted). To be enforceable, a settlement agreement must address all its essential terms with a reasonable degree of certainty and definiteness. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 481 (Tex. 2019) (citation omitted). For instance, an agreement that leaves essential matters open for future negotiation is not binding upon the parties and merely constitutes an "'agreement to agree.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). However, an agreement to execute a future contract is binding on the parties if the agreement contains all essential terms of the future contract. *McCalla v. Baker's Campground, Inc.*, 416 S.W.3d 416, 418 (Tex. 2013) ("Agreements to enter into future contracts are enforceable if they contain all material terms."); *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (To be effective, a Rule 11 agreement must consist of "'a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement[.]'"). Thus, a binding settlement agreement may exist

8

when parties "'agree upon some terms . . . and understand them to be an agreement, and yet leave other portions of an agreement to be made later. *Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 746 (Tex. 1988) (quoting *Scott v. Ingle Bros. Pacific, Inc.*, 489 S.W.2d 554, 555 (Tex. 1972)).

Whether a Rule 11 settlement agreement fails for lack of essential terms is "'a question of law to be determined by the court, unless there is ambiguity or unless surrounding facts and circumstances demonstrate a factual issue as to an agreement.'" *Moore v. Patriot Sec. Inc.,* No. 09-16-00182-CV, 2018 WL 1188810, at *14–15 (Tex. App.—Beaumont Mar. 8, 2018, pet. denied) (quoting *Ronin v. Lerner*, 7 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). Essential terms are those that parties would reasonably regard as "'vitally important ingredient[s]'" of their bargain. *Fischer*, 479 S.W.3d at 237 (citation omitted). Although courts determine whether a term is essential on a contract-by-contract basis, a settlement agreement that provides for a release of claims in exchange for the payment of money generally contains all essential terms. *Barrow-Shaver*, 590 S.W.3d at 481; *see, e.g., Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 745 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (concluding agreement to return shares of stock in exchange for payment of money and joint dismissal of lawsuit with prejudice contained essential terms); *Green v. Midland Mortg. Co.*, 342 S.W.3d

9

686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (concluding agreement to pay $40,000 in exchange for settlement and release of all claims contained essential terms); *Cantu v. Moore*, 90 S.W.3d 821, 825 (Tex. App.—San Antonio 2002, pet. denied) (holding agreement to pay $150,000 in exchange for release of claims, although source of funds and terms of indemnity were unspecified, contained essential terms of settlement agreement); *see also Padilla*, 907 S.W.2d at 460–61 (noting material terms of Rule 11 settlement agreement include payment and release of claims).

In this case, the express language of the parties' settlement agreement is unambiguous. It requires Carnahan to release all claims in the underlying proceeding in exchange for a promissory note from Fisher for $125,000 payable in equal monthly installments over a five-year period. After those settlement terms were memorialized in the deposition record, Carnahan's attorney stated, "the parties have reached a settlement and are just finalizing the terms so that [the underlying proceeding] will be taken off the trial – docket." Fisher's attorney responded, "I agree with everything that [Carnahan's attorney] has said, and we agree with all the terms."

Fisher argues the settlement agreement is unenforceable because the parties failed to agree on the start date for payments, which Fisher maintains is an essential

10

term. However, settlement agreements memorialized on the record may be enforceable, even when they contemplate the drafting of a future, more formal agreement. *See Scott v. Ingle Bros. Pac., Inc.,* 489 S.W.2d 554, 555 (Tex. 1972) ("[P]arties may agree upon some of the terms of a contract, and understand them to be an agreement, and yet leave other portions of an agreement to be made later."). A party who wishes not to be prematurely bound by an agreement that leaves open other provisions for later negotiation should clearly state that the agreement is nonbinding. *See John Wood Group USA, Inc. v. ICO, Inc.,* 26 S.W.3d 12, 19 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

During the trial, Fisher testified he refused to execute the promissory note because the parties failed to agree on the start date for payments, but time of performance is not essential to a contract unless the parties expressly state time of performance is of the essence, or the surrounding facts and circumstances make it apparent that the parties intended the timing of performance to be of the essence. *See Capcor at KirbyMain, L.L.C. v. Moody Nat'l Kirby Houston S., L.L.C.,* 509 S.W.3d 379, 390 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Fisher testified Carnahan knew "the start date for payments" was an essential term, but we cannot use extrinsic evidence concerning "off-the-record" conversations between the parties to conclude "the start date for payments" is an essential term when the unambiguous language

11

in the settlement agreement is silent on the matter. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 757 (Tex. 2018) (When construing a contract, courts may only use extrinsic evidence "to aid the understanding of an unambiguous contract's language, not change it or 'create ambiguity.'"). Rather, we may use extrinsic evidence to aid our understanding of the settlement agreement's unambiguous language, keeping in mind our prime directive is ascertaining the parties' intent as dictated in the deposition record. *See id.*

The settlement agreement does not contain express language indicating the parties intended the agreement to be nonbinding until they agreed on the start date for payments. Both parties testified they executed the settlement agreement intending to resolve the underlying proceeding. Carnahan testified he relied on the settlement agreement when he withdrew his pending motions in the underlying proceeding and allowed the case to be dismissed for want of prosecution. Moreover, Fisher's attorney in the underlying proceeding testified he understood the settlement agreement to be "a full and final settlement[,]" and Fisher testified his attorney did not act improperly in agreeing to the settlement terms.

Accordingly, we conclude the unambiguous language in the settlement agreement indicates the parties intended for Carnahan to execute a release of claims in exchange for Fisher executing a promissory note for $125,000 plus interest

12

payable to Carnahan in equal monthly installments over a five-year period. The language also indicates the parties intended to be bound by that settlement agreement even though other terms, such as the start date for payments, were left for future determination. We overrule issue one.

In issue two, Fisher argues the trial court's amended judgment should be reversed because legally insufficient evidence supports the jury's finding that he failed to comply with the settlement agreement. According to Fisher, the evidence is legally insufficient because the parties did not agree on the start date for payments on the promissory note. We disagree.

When examining evidence for legal insufficiency, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Legally sufficient evidence enables a reasonable and fair-minded person to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. By contrast, there is less than a scintilla of evidence supporting a finding when the

13

evidence is "'so weak as to do no more than create a mere surmise or suspicion.'" *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). Since Fisher challenges the legal sufficiency of an adverse finding on which he did not bear the burden of proof, he must show that no evidence supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011) (citation omitted).

Fisher argues no evidence supports the finding that he failed to comply with the settlement agreement since the parties failed to agree on the start date for payments. The trial court properly instructed the jury that the parties were required to comply with the settlement agreement "within a reasonable time under the circumstances." As we explained earlier, the unambiguous language in the settlement agreement does not demonstrate the parties intended for Fisher to start tendering payments on a certain date, and since the time of payment is not essential to the agreement, the law required Fisher to execute the promissory note and tender payment within a reasonable time. *See Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 869 (Tex. App.—Fort Worth 2011, no pet.) ("'[W]here no time for performance is stated in a contract, the law will imply a reasonable time.'"); *see also Fischer*, 479 S.W.3d at 239 (explaining that when construing an agreement to avoid forfeiture courts often imply a term setting a reasonable time of payment).

14

The jury considered undisputed evidence that: (1) Carnahan satisfied the full debt owed by Titan to the bank, but Fisher refused to pay his half of the debt back to Carnahan, which resulted in the first lawsuit in 2017; (2) during the pendency of that lawsuit and up until the time of Fisher's deposition on June 5, 2019, Fisher never paid any money to reimburse Carnahan for half of Titan's debt paid by Carnahan to the bank; (3) Fisher and his attorney agreed to the terms of the settlement agreement when it was read into the record on June 5, 2019, and at that time, Fisher never objected to the interest rates or the payment schedule; (4) when presented with the proposed settlement documents and promissory note, Fisher testified that he never agreed to the interest rates and payment schedule when the settlement agreement was read into the record; (5) Fisher then claimed he intended to start tendering payments in about a year, when he finished paying off his divorce settlement, which has not occurred; (6) when contacted about the settlement documents, promissory note or payments, Fisher admitted that at times he had hung up on calls, ignored or didn't answer calls, or didn't return calls; (7) Fisher did not execute a promissory note or tender any payments, which lead to the filing of the current lawsuit; (8) even though the parties entered into their settlement agreement on the record more than two years prior to trial, Fisher has continued to refuse to make any payments to Carnahan; (9) Fisher claimed that there is no enforceable contract because the parties

15

never agreed on a start date, even though he admitted that the settlement agreement that was read into the record did not include any delayed start date for when payments would begin; and (10) Fisher claimed that he does not have to comply with the terms of the settlement agreement because he has never signed the settlement documents or promissory note.

From this evidence, the jury could have reasonably determined that Fisher, having agreed to initiate payments in a reasonable period of time on a five-year installment payment plan under which he agreed to pay the total sum of $125,000, failed to comply with his agreement when he failed to make any payments to Carnahan. Therefore, we conclude legally sufficient evidence supports the jury's finding that Fisher failed to comply with the settlement agreement. We overrule issue two. Having overruled both of Fisher's issues, we affirm the trial court's amended judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on July 3, 2023
Opinion Delivered October 5, 2023

Before Golemon, C.J., Horton and Johnson, JJ.