Josephine MARTIN, Appellant,

v.

Dan BLACK; Mary Patricia Black; W.H. Black; Brazco Development, Inc.; Black Ranch Partnership; Dan P. and W.H. Black Partnership; James Alsup; and Lynch, Chappell & Alsup, P.C., Appellees.

No. 14–94–00531–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 21, 1995.

Rehearing Overruled Nov. 2, 1995.

Lance K. Bruun, Robert Michael Inserni, Corpus Christi, for appellant.

Lee Hamel, Harrell Feldt, Richard H. Page, Sam W. Cruse, Jr., Houston, for appellees.

Before YATES, FOWLER and CANNON,* JJ.

## OPINION

FOWLER, Justice.

This case involves a dispute over an agreement reached at mediation. In the trial court, appellant, Josephine Martin, contested her intent to be bound by the agreement and raised questions about its enforceability. When appellees filed motions to enforce the mediation agreement the trial court denied appellant's request for a jury, held an evidentiary hearing and entered a judgment based on the agreement reached at mediation. The issues presented on appeal are what procedural vehicle a court may use to enter a judgment on a mediated settlement agreement, whether a fact issue exists concerning the parties' intent to be bound, and whether a proper jury request was made. We conclude that (1) the rules of civil procedure set forth the procedures to enforce a mediated settlement agreement, (2) a fact issue exists, and (3) Martin properly requested, and was entitled to, a jury trial on that fact issue. We therefore reverse the trial court's judgment.

## FACTS

In early 1993, Martin sued appellees, Dan and W.H. Black, Dan Black's wife, Patricia, as well as several business entities associated

* The Honorable Bill Cannon sitting by assignment.

with the Blacks. Martin alleged multiple causes of action arising from certain business dealings with the Blacks. Dan and W.H. Black are Martin's nephews. The parties voluntarily agreed to mediate their dispute. After a two-day mediation, the parties reached an agreement on a number of terms. The terms of the agreement are outlined in two handwritten documents referred to as "term sheets" which were signed by the parties and their counsel and/or advisors. One term sheet (the "Brazco term sheet") was executed by Martin and Dan Black, Patricia Black, Brazco Development, Inc. and two partnerships (the "Brazco defendants")[1]. The other term sheet (the "Black term sheet") was executed by Martin and W.H. Black and expressly provided that it was contingent on Martin's settlement with the Brazco defendants. The agreements called for the parties to draft a number of documents, including the final settlement agreement, the final judgment, a guaranty and a deed of trust intended to provide security for one million dollars in future payments to Martin. At issue in this appeal is paragraph seventeen of the Brazco term sheet. That provision specifically states that "the parties' understandings are *subject to securing documentation satisfactory to the parties.*"

The parties began drafting and exchanging documentation immediately after the mediation. The lawyer for the Brazco defendants took responsibility for preparing the final settlement agreement. The first draft sent to Martin was worded so that the Brazco defendants would, at Martin's expense, receive the tax benefits from the agreement. Martin wanted the tax benefits for herself; otherwise, the value of the agreement to her greatly decreased. After some discussion between the lawyers on the issue, the parties were not able to agree on the tax allocation. As a result of their inability to resolve the tax issue, Martin's attorney notified appellees' counsel that Martin wished "to terminate further settlement negotiations and continue with the litigation."

Martin amended her petition adding new parties and causes of action. Appellees subsequently sought to enforce the term sheets as final, binding settlement agreements. W.H. Black filed a Motion to Enter Take Nothing Judgment and set it for a hearing. The Brazco defendants filed a Motion to Enforce Settlement Agreement and set the motion for hearing on the same day as W.H. Black's motion (the motions collectively are called "motions to enforce"). Martin filed a response to these motions to enforce. The response included Martin's affidavit stating in part that she did not intend for the term sheets to constitute final and binding settlement agreements and that the documentation drafted was unacceptable to her.

At the hearing on the motions to enforce, appellees maintained that (1) the term sheets were final settlement agreements and binding on all parties, (2) the term sheets were unambiguous and enforceable as a matter of law, and (3) the trial court should enter a judgment adopting the settlement agreements and order that they be enforced. In response, Martin alleged, among other things, that she was entitled to a jury trial on the existence of a binding settlement agreement. The trial court denied the request for a trial, finding that an agreement existed. The court, however, decided to hear testimony on the interpretation of paragraph seventeen of the Brazco term sheet.

Both Martin and her accountant testified at the hearing. Appellees offered into evidence the term sheets and other documents prepared by the parties after the mediation. At the close of evidence, the trial court held that the term sheets were clear and unambiguous and ruled as a matter of law that they constituted binding and enforceable settlement agreements. The trial court then entered a final judgment on the settlement agreements and denied Martin's Motion for New Trial.

## POINTS OF ERROR

Martin raises five points of error. However, because of our disposition of the case, we will address only the first point of error. In

---

1. The two partnerships were the Black Ranch Partnership and the Dan P. and W.H. Black Partnership. Although named as parties, these partnerships were formally dissolved before the commencement of the litigation.

this point, Martin claims that the trial court erred because it refused her request for a jury trial on the enforceability of the term sheets. Appellees propound a number of arguments in response to this claim, but primarily maintain that (1) Martin cannot repudiate the mediated settlement agreement, having already signed it; (2) the trial court was authorized to hold the type of hearing it held and to enter judgment on the motions to enforce because the pertinent section of the Civil Practice & Remedies Code authorizes an abbreviated hearing when the parties have signed an agreement at mediation; and (3) Martin had the opportunity to present her evidence on the issue of enforceability and thus, was not entitled to a jury trial on that issue.

## STANDARD OF REVIEW

■ One of the primary issues in this case is whether a fact issue exists as to Martin's intent to be bound by the term sheets. The trial court ruled as a matter of law that the term sheets were enforceable. Consequently, we will review the evidence in the light most favorable to the non-movant, Martin, and consider whether there is any evidence to show that she did not intend to be bound by the term sheets. *Nixon v. Property Management*, 690 S.W.2d 546, 548–49 (Tex. 1985).[2] We conclude that Martin is entitled to a jury trial because a fact issue exists as to the enforceability of the term sheets, and, under the circumstances of this case, Martin timely requested a jury trial. In reaching this conclusion, we consider the threshold issue of what is the procedure for enforcing a mediated settlement agreement where one of the parties contests their intent to be bound.

## THE RULES OF CIVIL PROCEDURE GOVERN THE ENFORCEMENT OF A MEDIATED SETTLEMENT AGREEMENT

■ We start with the proposition that a mediated settlement agreement is like any other contract and thus is *enforceable under contract law.* Both the Alternative Dispute Resolution (ADR) statute and the case law confirm this proposition. The pertinent section of the ADR statute reads, "[i]f the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner *as any other written contract."* TEX.CIV. PRAC. & REM.CODE ANN. § 154.071(a) (Vernon's Supp.1995). (emphasis added) Numerous cases confirm that a mediated settlement agreement is enforceable under contract law. *Cary v. Cary*, 894 S.W.2d 111, 112 (Tex. App.—Houston [1st Dist.] 1995, n.w.h.); *Hur v. City of Mesquite*, 893 S.W.2d 227, 234 (Tex.App.—Amarillo 1995, writ pending); *Marriage of Banks*, 887 S.W.2d 160, 163 (Tex.App.—Texarkana 1994, no writ); *Stevens v. Snyder*, 874 S.W.2d 241, 243 (Tex. App.—Dallas 1994, writ denied); *Marriage of Ames*, 860 S.W.2d 590, 591 (Tex.App.—Amarillo 1993, no writ).

■ Because a mediated settlement agreement is enforceable under contract law, then the same procedures used to enforce and enter judgment on other contracts should apply to mediated settlement agreements. When the legislature enacted the ADR statute, it did not order the courts to follow a special procedure applicable only to mediated settlement agreements. It said only that a mediated settlement agreement is enforceable *as any other contract.* TEX.CIV.PRAC. REM.CODE ANN. § 154.071(a) (Vernon's Supp. 1995).

■ When we look to the rules of civil procedure, the only applicable vehicles for obtaining judgment on a dispute over whether a contract exists are (1) a motion for summary judgment, if no fact issue exists, and (2) a non-jury or jury trial, if a fact issue

---

2. Although one of the defendants' motions does not comply with the requirements of TEX.R.CIV.P. 166a and although the trial court heard testimony in violation of that rule, we think the appropriate standard of review is that applied to summary judgments. The only issue before the court was whether there was a fact issue as to the parties' intent to be bound by the term sheets.

The Brazco defendants suggest for the first time in their post-submission brief that the proceeding below was a trial. However, as we will address, the case was never set for trial and the parties never received notice of a trial. In fact, it was Martin, not appellees, who requested and was denied a trial below.

exists. *See* TEX.R.CIV.P. 166a, 262–270, 295. A trial court may enter a judgment on a mediated settlement agreement where one of the parties contests their intent to be bound only by following one of these vehicles set out in the rules of civil procedure.

## FACT ISSUE CONCERNING INTENT TO BE BOUND

■ Having determined the rules that a court must follow to enter a judgment on a mediated settlement agreement, we next determine whether a fact issue exists as to the parties' intent to be bound by the term sheets. Our sole focus in determining the existence of a fact issue is upon the following clause in the Brazco term sheet: "the parties' understandings are subject to securing documentation satisfactory to the parties." The Black term sheet was made contingent on the settlement with the Brazco defendants.

Martin contends that the trial judge could not have ruled as a matter of law that the term sheets were clear and unambiguous, binding contracts because a fact issue exists concerning the parties' intent to be bound. This contention requires us to consider whether an unresolved fact issue remains in this case because of the phrase "subject to securing documentation satisfactory to the parties". We think it does.

The case of *Foreca, S.A. v. GRD Development Co., Inc.*, 758 S.W.2d 744, 746 (Tex. 1988), controls our decision on this issue. In *Foreca,* the parties executed a handwritten document containing the material terms for the sale and purchase of amusement park rides. *Id.* at 744. A provision of that document provided: "subject to legal documentation contract to be drafted by [the attorney for one of the parties]." *Id.* at 745. When one of the parties repudiated the agreement, the other sued for breach of contract. *Id.*

The Supreme Court observed that the parties had reached an agreement as to certain material terms but contemplated another formal document. *Id.* Thus, the issue before the court was whether the contemplated formal documentation was a condition precedent to the formation of a contract or merely a memorial of an already enforceable contract.

*Id.* The intent of the parties was determinative of this issue. Because intent was disputed, the question was one of fact for the jury. *Id.* at 746.

In reaching this conclusion, the court cited *Scott v. Ingle Brothers Pacific, Inc.*, 489 S.W.2d 554, 556 (Tex.1972) and noted that the language "subject to legal documentation" was not conclusive on the issue of intent. *Foreca,* 758 S.W.2d at 746. The court also found the oft-cited Professor Corbin instructive on this issue:

> One of the most common illustrations of preliminary negotiation that is totally inoperative is one where the parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. *Often it is a difficult question of fact whether the parties have this understanding;* and there are very many decisions holding both ways. These decisions should not be regarded as conflicting, even though it may be hard to reconcile some of them on the facts that are reported to us in the appellate reports. *It is a question of fact that the courts are deciding, not a question of law; and the facts of each case are numerous and not identical with those of any other case. In very many cases the question may properly be left to a jury.*

*Id.* at 745 (quoting A. CORBIN, CORBIN ON CONTRACTS § 30 at 97 (1963)). (emphasis in original)

■ The question is the intention of the parties. As the Supreme Court stated in *Scott,* "intention is usually an inference to be drawn by the fact finder from other facts and circumstances." 489 S.W.2d at 557. In *Foreca,* the court cited a number of factors which may be helpful in determining whether a contract has been concluded:

> the extent to which express agreement has been reached on all the terms to be included; whether the contract is of a type usually put in writing; whether it needs a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or

small; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance during the negotiations.

758 S.W.2d at 746 n. 2 (citing RESTATEMENT (SECOND) OF CONTRACTS § 27, comment c).

In the case at hand, the motions to enforce and the responses thereto reveal the following facts. The parties executed two handwritten documents containing at least some material terms of the settlement. The documents provide that "the parties' understandings are subject to securing documentation satisfactory to the parties." In addition, (1) many documents containing hundreds of pages were left to be drafted after the mediation; (2) the settlement was for a large amount; (3) some of the contracts were unusual, some were not; (4) neither of the parties took any action in preparation for performance during the negotiations; and (5) the final judgment and settlement agreement needed a formal writing for their full expression.

Most importantly, the motions to enforce themselves reflect a dispute on whether the parties intended the term sheets to be the "final agreement merely memorialized by a formal document." Appellees contended that the parties had a binding agreement and that the parties merely had to complete certain tasks necessary to implement the terms of that settlement before drafting the formal settlement documents. Martin maintained otherwise. For example, in her affidavit she stated the following:

> I did not intend for the handwritten "term sheets" executed at approximately midnight at the conclusion of the second day of mediation of this case to constitute final and binding settlement agreements. I understood there were many details to an agreement which remained to be worked out following the mediation. Since I have been unable to obtain agreements from both Dan and W.H. Black concerning essential details of a settlement acceptable to me, I have terminated further settlement discussions.

Applying *Foreca* and *Scott* to the instant case, we cannot say as a matter of law whether the parties intended the formal documentation to be a condition precedent to a final settlement agreement or merely a memorial of an already enforceable settlement agreement. *See Foreca*, 758 S.W.2d at 746. Thus, we hold that a fact issue exists as to the parties' intent to be bound by the term sheets.

## MARTIN PROPERLY REQUESTED A JURY TRIAL

■ Having found a fact issue, we must now address whether Martin properly requested a jury trial. We hold that under the circumstances of this case, she made a timely and appropriate request.

At the hearing below, Martin maintained that a fact issue existed on her intent to be bound and noted her request for a jury on the issue when it became evident that the trial court was going to hear testimony. Appellees maintain that Martin was not entitled to a jury trial when she requested one at the hearing because she had not made a jury demand or paid a jury fee before the hearing. In support of their claim, appellees rely on TEX.R.CIV.P. 216. That rule provides that a written request for a jury trial must be made, and a jury fee paid, "... within a reasonable time before the date set for trial ..., but not less than thirty days in advance."

■ It is within the discretion of the trial court to deny a jury trial in the absence of a timely request or payment of a jury fee. *Huddle v. Huddle*, 696 S.W.2d 895 (Tex.1985) (on motion for rehearing) (per curiam). However, this case was never set for trial— either by the parties or by the court. *See* TEX.R.CIV.P. 245. There was no mention of a "trial" in the "notice of hearing" nor was any such notice of a "trial" timely. *See id.* In short, Martin's counsel made a request for a jury trial as soon as it appeared that a fact issue would be tried.

Because there was no trial setting, and Martin requested a jury as soon as she realized that a fact issue might be tried, there was no untimely request for a jury trial or

payment of a jury fee. *See* TEX.R.CIV.P. 216. Therefore, we hold that the objection by Martin's counsel at the enforcement proceeding was sufficient to preserve error on Martin's complaint that she was deprived of a jury trial. *See Browning v. Holloway,* 620 S.W.2d 611, 617 (Tex.App.—Dallas) (on motion for rehearing), *writ ref'd n.r.e.,* 626 S.W.2d 485 (Tex.1981) (per curiam) (holding that plaintiffs did not waive their right to a jury trial by participating in non-jury hearing where plaintiffs objected to the proceeding on grounds they were denied their right to jury trial).

Because we sustain Martin's first point of error, we need not address her remaining points of error. Accordingly, we reverse the trial court's judgment and remand this case to that court for proceedings consistent with this opinion.