Affirmed and Memorandum Opinion
filed January 4, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00772-CV



Dr. Theodore M.
Herring, Jr. and Carmen Dawson,
Appellants

v.

Heron Lakes Estates
Owners Association, Inc., Appellee 



On Appeal from
the 281st District Court

Harris County, Texas

Trial Court
Cause No. 2006-74019



 

MEMORANDUM OPINION

Theodore Herring, Jr. and Carmen Dawson appeal from a
final judgment entered by the trial court following the court’s granting of a
partial summary judgment in favor of appellee Heron Lakes Estates Owners
Association, Inc. and a subsequent bench trial.  In two issues, Herring and
Dawson argue that the trial court erred in granting the partial summary
judgment in favor of the Association on its breach of contract claim based on a
Rule 11 settlement agreement and in awarding attorney’s fees to the Association
after the bench trial.  We affirm.

Background

Herring and Dawson own
property that the Association alleged was governed by a Declaration of
Covenants, Conditions, and Restrictions (“CCRs”).  According to the
Association’s original petition, Herring and Dawson were violating the CCRs by
constructing a house with features not authorized by the Association’s
Architectural Control Committee.  Namely, Herring and Dawson were installing an
unapproved red tile roof and a wrought iron fence, and they had failed to
submit to the Committee for approval a description of the color of the exterior
of the house and the driveway.  The Association initially sued Herring and
Dawson and sought injunctive relief to force Herring and Dawson to comply with
the CCRs.  Herring and Dawson countersued for a declaration that they were not
bound by the CCRs and for tortious interference with contract and slander of
title.  

Immediately before the
court was to hold a temporary injunction hearing, the parties entered into
negotiations to settle the lawsuit.  According to uncontroverted summary
judgment evidence, the negotiations were attended by Herring, Dawson, Bruce
Turner (counsel for Herring and Dawson), James Leeland (counsel for the
Association), and representatives of the Association.  Instead of holding a
hearing on the temporary injunction, the court held a “Settlement Agreement”
hearing under Rule 11 of the Texas Rules of Civil Procedure.[1] 
At the hearing, the court announced, “Put your agreement on the record.”  Turner
and Leeland then dictated a number of terms that the parties had allegedly
agreed upon.  One of these terms was that Herring and Dawson “will ratify the
CCRs and that ratification will be done when we reach a settlement on this.”

When Herring and Dawson later refused to ratify the
CCRs or to comply with other terms of the alleged settlement agreement, the
Association amended its petition to add a breach of contract claim and then
moved for summary judgment on that claim.  The trial court awarded partial
summary judgment and ordered Herring and Dawson to sign the CCRs and comply
with other provisions of the settlement agreement, including paying the
Association $700 in assessment fees and moving the wrought iron fence.  The
court then held a bench trial on the remaining issues, including the issue of attorney’s
fees and Herring and Dawson’s tortious interference claim.  The court awarded
the Association $71,804 in attorney’s fees with additional appellate attorney’s
fees, rendered a take-nothing judgment on Herring and Dawson’s tortious
interference claim, and issued an injunction directing Herring and Dawson to complete
the construction of their house and eventually remove a chain link fence that
they had installed.  This appeal followed.

Partial Summary Judgment

            In their first issue,
Herring and Dawson argue that the trial court erred in granting summary
judgment for two reasons: (1) the transcript of the settlement hearing shows
that no contract was formed as a matter of law because the parties did not intend
to enter into a presently-binding agreement, such that the parties had a mere
agreement to agree;[2]
and (2) the Association was not entitled to judgment as a matter of law because
Herring and Dawson’s consent was necessary for the court to render a judgment enforcing
the settlement agreement.  The Association responds that no genuine issue of
material fact was raised by the summary judgment evidence and that Herring and
Dawson’s repudiation of the settlement agreement did not preclude the court
from entering summary judgment against them.

A.   
Standard of Review

We review de novo the
granting of summary judgment.  Mann Frankfort Stein & Lipp Advisors,
Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  The Association bears
the burden of showing that there was no genuine issue of material fact and that
it was entitled to judgment as a matter of law.  See id. (citing Tex. R.
Civ. P. 166a(c)).  If the Association satisfies this burden, then the burden
shifts to Herring and Dawson to present evidence raising a fact issue.  See Transcon.
Ins. Co. v. Briggs Equip. Trust, 321 S.W.3d 685, 691 (Tex. App.—Houston
[14th Dist.] 2010, no pet.).  We must view the evidence in the light most
favorable to Herring and Dawson, crediting evidence favorable to them if
reasonable jurors could, and disregarding contrary evidence unless reasonable
jurors could not.  See Mann Frankfort, 289 S.W.3d at 848.  

B.    
There was no genuine issue of material fact regarding whether the
parties intended to be presently bound.

Contract law governs
agreements made in open court pursuant to Rule 11.  Ronin v. Lerner, 7
S.W.3d 883, 886 (Tex. App.—Houston [1st Dist.] 1999, no pet.).  Parties may
enter into a binding settlement agreement even if the parties contemplate that
a more formal document memorializing the agreement will be executed at a later
date. See Foreca, S.A. v. GRD Dev. Co., 758 S.W.2d 744, 745–46 (Tex.
1998); see also McLendon v. McLendon, 847 S.W.2d 601, 606–07 (Tex.
App.—Dallas 1992, writ denied) (“[T]he attempts by the parties to reduce the
rule 11 stipulations to writing do not affect the nature and effect of the
stipulations dictated at the [hearing in open court].”).  But if the parties do
not intend to be bound until other terms are negotiated or until a formal
document is executed, then “there is no binding contract, but only an agreement
to agree.”  Mabon Ltd. v. Afri-Carib Enters., Inc., 29 S.W.3d 291, 300
(Tex. App.—Houston [14th Dist.] 2000, no pet.); accord Fort Worth Indep.
Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 846 (Tex. 2000); Foreca,
758 S.W.2d at 745–46.  The key question is whether the parties intended for a
formal document to be executed as a condition precedent to being bound by
contract.  Foreca, 758 S.W.2d at 745–46.  See generally Williston
on Contracts § 4:11 (4th ed. 2007).

As a general rule, because intent to be bound is a
question of fact, summary judgment would not be appropriate.  Gaede v. SK
Invs., Inc., 38 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2001, pet.
denied); see Foreca, 758 S.W.2d at 746; Fort Worth Indep. Sch. Dist.,
22 S.W.3d at 846–47; see also Williston
on Contracts § 4:11 (“Ultimately, the question is one of fact as to the
intention of the parties.”).  But in some cases, the intentions of the parties
may be determined as a matter of law.  WTG Gas Processing, L.P. v.
ConocoPhillips Co., 309 S.W.3d 635, 643 (Tex. App.—Houston [14th Dist.]
2010, pet. filed) (citing Foreca, 758 S.W.2d at 746).  We may determine this
issue as a matter of law if an unambiguous writing shows that the parties intended
to be bound by contract.  Hardman v. Dault, 2 S.W.3d 378, 380 (Tex.
App.—Austin 1999, no pet.) (citing Padilla v. LaFrance, 907 S.W.2d 454,
461–62 (Tex. 1995)); see Gilbert v. Pettiette, 838 S.W.2d 890,
893 (Tex. App.—Houston [1st Dist.] 1992, no writ); Henry C. Beck Co. v.
Arcrete, Inc., 515 S.W.2d 712, 716 (Tex. Civ. App.—Dallas 1974, no writ). 
Whether a contract is ambiguous is a question of law, and a contract is
ambiguous if it is reasonably susceptible to more than one meaning.  Coker
v. Coker, 650 S.W.2d 391, 394 (Tex. 1983).

Accordingly,
summary judgment is proper in this case only if the unambiguous language of the
contract establishes the material terms, including that the parties intended to
enter into a presently-binding contract.  In Foreca, the Texas Supreme
Court held that a handwritten document created a fact issue as to the parties’
intentions because the document, although it included many essential terms,
included the phrase “subject to legal documentation contract to be drafted by
[one of the party’s attorneys].”  758 S.W.2d at 745–46.  The court held that this
language was ambiguous,  and the jury could resolve its meaning.  Id. at
746.  Relying on Foreca, this court held in Martin v. Black, 909
S.W.2d 192 (Tex. App.—Houston [14th Dist.] 1995, writ denied), that the phrase
in a mediation term sheet “subject to securing documentation satisfactory to
the parties” also created a fact issue concerning the parties’ intentions.  Id.
at 196.

Distinguishing
the “subject to” language in Foreca, the San Antonio Court of Appeals
held that the phrase in a written settlement agreement “final documents to be
signed by 1-1-97” did not create a fact issue because it was unambiguous that
the parties did not view the signing of future documents to be a condition
precedent to creation of a binding contract.  Hardman, 2 S.W.3d at
380–81.  Thus, summary judgment was proper.  Id. at 381.  Similarly, in McLendon,
the Dallas Court of Appeals upheld the trial court’s oral judgment after a Rule
11 settlement hearing even though one of the attorneys described the settlement
hearing as “dictat[ing] the general parameters and terms” and explained to the
client “you understand that each of you will be required to execute documents
in order to effectuate the purposes of this agreement.”  847 S.W.2d at 606–07. 
The court considered these statements in light of the other statements made at
the hearing, such as “you agree to execute all documents which your counsel
believes to be reasonable and necessary to accomplish the purposes of this
settlement agreement, and to reduce it all to proper form.”  Id. at
606.  There was no fact issue concerning the parties’ intentions—they intended
to enter into a binding contract.  Id. at 606–07.

Here, the trial
court began the hearing with the following statement: “You guys can proceed. 
Put your agreement on the record.”  Soon thereafter, Turner explained, 

So, the agreement that we’ve reached today is that, number
one, my client will ratify the CCRs and that ratification will be done when we
reach a settlement on this because—which is in the next week or so, and
that—and that assessments under those CCRs will begin, prospective only, when
we enter into the settlement agreement going forward.  They will not be
retrospective.

Herring and Dawson argue that the
following phrases indicate that the parties did not intend to enter into a
settlement agreement at the hearing: “when we reach a settlement” and “when we
enter into the settlement agreement.”  They also point to Leeland’s statement:
“[W]e will prepare the appropriate settlement documents to be agreed upon
between the parties to support our settlement agreements.”

            At oral argument in
this case, appellate counsel for Herring and Dawson incorrectly asserted that
the transcript contained the conditional statement “If we reach an
agreement.”  The actual transcript of the settlement hearing does not support
the argument that Herring and Dawson make on appeal.  It is clear and
unambiguous from the context of the settlement hearing that the word when
was used to express a duration of time rather than a condition precedent to the
formation of a contract.  In this context, when is fundamentally
different from the word if or other conditional expressions, such as the
subject to language found in Foreca and Martin.  Use of
the word if may have created a fact issue precluding summary judgment, but
the word when does not in this case.  When is a sequential term:
after the parties complete certain actions, assessments would begin to accrue.[3]

Viewing the transcript
as a whole, there is only one reasonable interpretation: the partied intended
to enter into a binding settlement agreement, and the numerous terms dictated
into the record were not conditioned on any future negotiations or execution of
formal settlement documents.  In addition to the agreement to ratify the CCRs
and pay assessments in the future, the parties agreed to many other terms,
including that (1) the house could have a red tile roof; (2) Herring and Dawson
could have a circular driveway with stones earthen in color; (3) the house
could be made of stucco and synthetic brick, with the stucco white in color and
the brick earthen tones; (4) the wrought iron fence could remain the same size
but could not extend past the front plane of the house; (5) Herring and Dawson
would submit a scheme for the fence to the Association for approval within a
few weeks; (6) portions of the fence would be removed when the certificate of
occupancy was granted; (7) if Herring and Dawson wished to change any colors
for the house, they would submit proposals to the Association for review and
approval; (8) the parties would pay their own attorney’s fees; (9) the
Association would withdraw its request for a temporary injunction; and (10) all
causes of action by both parties would be dismissed when the certificate of
occupancy was issued, which the parties expected to take about two to three
months.  Because no essential terms were missing, no further negotiations were
necessary.  Every issue raised in the Association’s original petition was
addressed.  The transcript unambiguously shows that the parties intended to be
presently bound.

At oral argument,
appellate counsel for Herring and Dawson urged us to consider Herring’s
affidavit attached to the response to the Association’s motion for summary
judgment.  Counsel suggested that the affidavit raises a genuine issue of
material fact because Herring stated, “At no time did I agree to ratify the
Declarations of Heron Lakes.  I explicitly communicated to Mr. Turner that I
would not ratify the Declarations.”  Assuming that this argument was not
waived,[4] we nonetheless may not
consider extrinsic evidence contradicting the unambiguous language of a contract. 
Nat’l Union Fire Ins. Co. of Pitts., Penn. v. CBI Indus., Inc., 907
S.W.2d 517, 520–22 (Tex. 1995).  Herring’s affidavit contradicts an unambiguous
term: “my client will ratify the CCRs.”  Accordingly, the affidavit may not be
used to raise a genuine issue of material fact.[5]

C.   
The Association was entitled to judgment as a matter of law even
though Herring and Dawson repudiated the settlement agreement.

When a party enters
into a Rule 11 settlement agreement but then later repudiates the agreement, a
court may enter a judgment against that party for breach of contract.  See,
e.g., Padilla v. LaFrance, 907 S.W.2d 454, 461 (Tex. 1995).  Such a
judgment is not a consent judgment, but rather a judgment by the court for
breach of contract.  A party’s revocation of consent to a settlement agreement “does
not preclude the court . . . from enforcing a settlement agreement complying
with Rule 11 even though one side no longer consents to the settlement.”  Id. 
Accordingly, Herring and Dawson’s revocation of consent after entering into a binding
Rule 11 agreement did not preclude the court from granting summary judgment.

Herring and Dawson’s first issue is overruled.

Attorney’s Fees

            In their second issue,
Herring and Dawson argue that the trial court erred in awarding attorney’s fees
for two reasons: (1) the Association was precluded from obtaining attorney’s
fees under the Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (West 2008), because attorney’s fees were otherwise unavailable;[6] and (2) the
Association waived its right to recover attorney’s fees under an express term
of the contract providing that “there will be no attorneys’ fees awarded on
either side.”[7] 
The Association responds that (1) the trial court properly awarded attorney’s
fees on the breach of contract claim, see Tex. Civ. Prac. & Rem.
Code Ann. § 38.001 (West 2008), rather than under the Declaratory Judgment Act,
and (2) the language from the settlement hearing does not preclude an award of
attorney’s fees.

A.   
The trial court was authorized to award attorney’s fees under
section 38.001 of the Texas Civil Practice and Remedies Code.

In
its first amended petition, the Association requested attorney’s fees under
both the Declaratory Judgment Act and section 38.001 of the Texas Civil
Practice and Remedies Code.  A party may recover attorney’s fees under section 38.001
on a breach of contract claim “in addition to the amount of a valid claim and
costs.”  Id.  The Texas
Supreme Court has construed this statute to require that a prevailing party
recover at least some damages to also recover attorney’s fees.  Intercon.
Group P’ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 653 (2009); MBM
Fin. Corp. v. Woodlands Operating Co., 292 S.W.3d 660, 666 (Tex. 2009).  Here,
the trial court awarded $700 to the Association as a maintenance assessment fee
for the year 2007 based on the partial summary judgment ruling that Herring and
Dawson agreed at the settlement hearing to begin paying assessments for the
year 2007.  Accordingly, the Association was entitled to recover attorney’s
fees under section 38.001.  See MBM, 292 S.W.3d at 666; see also
Janicek v. 2016 Main Owners Ass’n, Inc., No. 01-96-00599-CV, 1997 WL
414951, at *6 & n.8 (Tex. App.—Houston [1st Dist.] July 24, 1997, no pet.)
(not designated for publication) (modifying attorney’s fees award, resulting in
$10,912.70 of attorney’s fees on a damages award of $125.50 for recovery of
condominium maintenance fees).  Because attorney’s fees were authorized under
section 38.001, we need not address whether attorney’s fees were also
authorized under the Declaratory Judgment Act.  See Tex. R. App. P. 47.1

B.     The
contract did not preclude an award of attorney’s fees.

Herring and Dawson rely primarily on cases dealing
with consent judgments to argue that the trial court erred by awarding
attorney’s fees in direct conflict with the language of the settlement
agreement.  But as we explained above, the final judgment rendered by the court
against Herring and Dawson was not a consent judgment.  See Padilla, 907
S.W.2d at 461 (noting the difference between a consent judgment and a judgment
rendered for breach of a settlement agreement).  Herring and Dawson seem to
argue that the Association waived its statutory right to attorney’s fees as a
matter of law.  But to waive this right in a contract, the waiver must “specifically
preclude [a] statutory claim to an award of attorney’s fees under Section
38.001.”  Nat’l Bank v. Sandia Mortg. Corp., 872 F.2d 692 (5th Cir.
1989) (interpreting Texas law); see also Bank of Am., N.A. v. Hubler,
211 S.W.3d 859, 865 (Tex. App.—Waco 2006, pet. granted, judgm’t vacated w.r.m.)
(holding that the claimant did not waive her statutory right to attorney’s fees
because the contract provision that the bank would not be liable “for
attorney’s fees incurred,” was “too general to apprise [the claimant] of what
right she [was] relinquishing, namely her statutory right to attorney’s fees
under Chapter 38”).  The contract provision at issue in this case did not
specifically preclude a statutory award of attorney’s fees for a breach of the
settlement agreement itself.  Rather, the parties agreed that the parties would
bear their own attorney’s fees incurred in the negotiation and settlement, not
that the Association waived attorney’s fees incurred to enforce the settlement
agreement.  Accordingly, the trial court did not err in awarding attorney’s
fees accruing from the point when Herring and Dawson breached the agreement.  

Herring and Dawson’s second issue is overruled.

Conclusion

The transcript of the Rule 11 settlement hearing in
this case unambiguously shows that the parties intended to enter into a
presently-binding contract.  Herring and Dawson’s repudiation of that agreement
did not preclude the trial court from entering a judgment against them for breach
of contract.  Further, attorney’s fees were authorized by section 38.001 of the
Texas Civil Practice and Remedies Code, and fees were not precluded by a
specific waiver in the contract.  Having overruled both of Herring and Dawson’s
issues, we affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

Panel consists of Chief Justice Hedges
and Justice Jamison and Senior Justice Mirabal.*









[1]
The parties do not dispute that the discussion took place “in open court” and
that a transcript of the hearing was “entered of record,” as required by Rule
11.  See Tex. R. Civ. P. 11.





[2]
This argument attempts to prove too much.  To reverse a traditional summary
judgment, we would need to hold only that there was a genuine issue of material
fact as to whether the parties intended to be presently bound.  We address
Herring and Dawson’s argument under the appropriate standard of review. 





[3]
See Restatement (Second) of Contracts
§ 227 cmt. b (“[U]nder a provision that a duty is to be performed ‘when’
an event occurs, it may be doubtful whether it is to be performed only if that
event occurs . . . .”).  The transcript shows that Turner was particularly
concerned about when assessments would begin to accrue, further highlighting
the distinction between when and if.  There is no ambiguity in
the transcript: Herring and Dawson agreed to ratify the CCRs, and assessments
would begin prospectively.





[4]
This argument is not presented in Herring and Dawson’s appellate brief, and
ordinarily we do not consider issues raised for the first time at oral
argument.  See Poland v. Willerson, No. 01-07-00198-CV, 2008 WL 660334,
at *5 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op., not
designated for publication); French v. Gill, 206 S.W.3d 737, 743 (Tex.
App.—Texarkana 2006, no pet.); Ajibade v. Edinburge Gen. Hosp., 22
S.W.3d 37, 40 (Tex. App.—Corpus Christi 2000, pet. struck); see also Tex.
R. App. P. 39.2 (“Oral argument should emphasize and clarify the written
arguments in the briefs.” (emphasis added)).





[5]
We do not intend to say this affidavit could never raise a fact issue. 
We recognize that extrinsic evidence is generally admissible to show the
nonexistence of a contract.  Baker v. Baker, 143 Tex. 191, 198, 183
S.W.2d 724, 728 (1944); Bellaire Kirkpatrick Joint Venture v. Loots, 826
S.W.2d 205, 213 (Tex.App.—Fort Worth 1992, writ denied); 29A Am. Jur. 2d
Evidence § 1119 (2008).  For example, extrinsic evidence may raise a fact
issue about whether an attorney lacked actual or apparent authority to bind his
or her client to a settlement agreement.  See Breceda v. Whi, 187
S.W.3d 148, 152–53 (Tex. App.—El Paso 2006, no pet.); City of Roanoke v.
Town of Westlake, 111 S.W.3d 617, 628–29 (Tex. App.—Fort Worth 2003, pet.
denied); Ebner v. First State Bank of Smithville, 27 S.W.3d 287, 300
(Tex. App.—Austin 2000, pet. denied).  But Herring and Dawson made no such
argument in the trial court or in this court, and we cannot reverse on this
ground.  See Tex. R. Civ. P. 166a(c); Tex. R. App. P. 38.1(i); see
also Breceda, 187 S.W.3d at 152–53 (affirming summary judgment for breach
of a settlement agreement because the client did not rebut the presumption that
the attorney had authority to settle).





[6]
See MBM Fin. Corp. v. Woodlands Operating Co., 292 S.W.3d 660,
670 (Tex. 2009) (“But when a claim for declaratory relief is merely tacked onto
a standard suit based on a matured breach of contract, allowing fees under
Chapter 37 would frustrate the limits Chapter 38 imposes on such fee
recoveries.”); City of Houston v. Texan Land & Cattle Co., 128
S.W.3d 382, 392 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (“More
specifically, a party may not use a declaratory judgment action to seek the
same relief afforded under another of its causes of action in an effort to
obtain otherwise impermissible attorney fees.”).





[7]
Herring and Dawson also argue in their brief that the trial court erred in
calculating attorney’s fees from the inception of the lawsuit, prior to the
breach of the settlement agreement.  Because the record does not support their
argument, they conceded this alleged error at oral argument 





*
Senior Justice Margaret Garner Mirabal sitting by assignment.